# W. P. DICKIRSON, Defendant in Error, *vs.* THE PACIFIC MUTUAL LIFE INSURANCE COMPANY, Plaintiff in Error.

*Opinion filed December 16, 1925—Rehearing denied Feb. 3, 1926.*

1. INSURANCE—*a term policy is subject to statute taking effect prior to renewal.* A term policy which is renewed by the payment of premiums from year to year is subject to the Standard Provisions statute of Illinois where the policy is renewed after the statute went into effect although when the policy was originally issued the statute had not been enacted, and any provisions in the policy that conflict with the statutes of the State are to be considered as amended in accordance with the statutes.

2. SAME—*correspondence in regard to claim is not necessarily a waiver of limitation.* The fact that the insurer negotiates with the claimant does not amount to a waiver of the period of limitation for bringing an action on the policy unless there is contained in the negotiation that which is calculated to lull the claimant into a false security, and such is not the case where the negotiation in regard to an accident policy consists entirely of correspondence, in which the insurer maintains the position that the injury was not due to an accident.

3. WAIVER—*what necessary to constitute waiver of a limitation.* To constitute a waiver of a limitation period for bringing an action the conduct of the party against whom the waiver is claimed must be such as to cause the other party to change his position by lulling him into a false security, thereby causing him to delay or waive the assertion of his rights, to his damage.

THOMPSON, J., dissenting.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Lawrence county; the Hon. JULIUS C. KERN, Judge, presiding.

WILSON, McILVAIN, HALE & TEMPLETON, and McGAUGHEY, TOHILL & McGAUGHEY, (NOAH W. TOHILL, and J. F. DAMMANN, JR., of counsel,) for plaintiff in error.

SUMNER & LEWIS, for defendant in error.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error, on writ of *certiorari* being allowed, brings for review a judgment of the Appellate Court affirming a judgment against it on two certain accident insurance policies for the sums of $5100, secured in the circuit court of Lawrence county by defendant in error. The policies were each for an indemnity of $2550 for total and permanent blindness in either eye, resulting from accidental means.

The evidence of defendant in error on the trial showed that on December 11, 1918, he stepped on a loose board, which tipped up and struck him on the left side of the jaw, and that about two weeks thereafter he found that he had lost the sight of his right eye, and his evidence tended to establish that a cataract had developed in that eye and that it was traumatic in character. The defense of plaintiff in error on the trial of the cause was upon two principal grounds: First, that the cataract was not traumatic but was an ordinary senile cataract due to the age of defendant in error and was in nowise related to the accident; and second, that while the accident happened on the 11th of December, 1918, suit was not brought until the 30th of September, 1921. To the latter of these defenses defendant in error replied that the limitation period named in the original policy on which suit was brought was six months, but that such limitation had been waived by plaintiff in error by its treatment of the controversy after the lapse of the limitation period named in the contract. Plaintiff in error in its plea of the Statute of Limitations averred that the limitation period set out in the contract has been amended by the so-called Standard Provisions statute, governing the issuance and conditions of all insurance policies of this character, which went into effect on January 1, 1916, (Cahill's Stat. 1925, chap. 73, secs. 469, 475,) and which fixed the period of limitation at two years after the date on which

proof of injury was due under the terms of the policy. Defendant in error replied that the policy in this case having been issued previous to the enactment of the Standard Provisions statute was not subject thereto.

The policy provided by its terms that it expired in twelve months from the date of issue. It also provided that it might be renewed, subject to the same conditions, by payment of the same premium, and that the company might cancel the same by giving written notice of such cancellation. The policy, after providing that suit thereon must be brought within six months from the date of filing proof of injury, reads: "Should any limitation set forth in this paragraph be prohibited by the statutes of the State in which this policy is issued, the said limitation shall be considered to be amended to agree with the minimum period of limitation by said statutes."

Plaintiff in error contends that the policy, when renewed each year, was a new policy, and that the Standard Provisions statute applied to the first renewal after January 1, 1916, and to all succeeding renewals, and that the contract was thereby amended so as to make the period of limitation two years, and that since suit was not started until September 30, 1921, the limitation provisions of the statute applied and defendant in error is not entitled to recover.

As to the first defense, the jury found that the blindness was due to the accident. This finding has been sustained by the Appellate Court. It was a controverted question of fact, and is therefore not open for consideration here.

Regarding the defense of limitation, the argument of defendant in error, as we understand it, is, that the six months' limitation fixed by the contract applies, and the Standard Provisions statute, fixing the limitation period at two years, does not apply, and that since plaintiff in error, during and after the six months' period of limitation in the contract, negotiated with defendant in error for a set-

tlement of the claim, it waived the right to insist on the limitation provisions. Plaintiff in error, on the other hand, argues that the Standard Provisions statute does apply, and that all communication between the parties pertaining to the claim ceased nearly nine months before the Statute of Limitations had run, and that the evidence pertaining to the communications establishes, as a matter of law, that there was no waiver of the right of the insurance company to insist upon the limitations statute as a defense

Whether the so-called Standard Provisions statute applies to a term policy issued before the act went into effect and renewed thereafter has not been previously considered by this court. Section 9 of the act provides that a policy issued in violation of the act shall be valid but shall be construed as provided in the act, and any provisions in the policy in conflict with the act shall be governed by the provisions of the act. Whether the two-year limitation is to be read into the renewals of the policy in the instant case after the first of January, 1916, depends, in part, upon when the policy sued upon was in fact issued. If the policy sued upon was issued in 1910 the Standard Provisions statute cannot be held to apply, for the language of the amendment provision of the policy cannot be construed to refer to a statute that may be enacted in the future and the legislature has no power to change or vary the terms of a contract of this character. If, on the other hand, the policy expired at the end of each twelve months and was renewed by payment of the premium, then the policy was issued as of the date of the renewals, and the Standard Provisions statute, making the period of limitation in which action is to be brought two years instead of six months, as provided in the policy, does apply.

This court held in *Palmer* v. *Bull Dog Auto Ins. Ass'n,* 294 Ill. 287, that a renewal of a policy is, in effect, a new contract of assurance, being, unless otherwise expressed, on the same terms and conditions as were contained in the

original policy. To the same effect is *Hartford Fire Ins. Co.* v. *Walsh,* 54 Ill. 164.

In *Hoyt* v. *Massachusetts Bonding Ins. Co.* 113 Atl. (N. H.) 219, an accident policy had been issued in 1908. Its period of coverage was one year but was renewable from term to term. It provided six months' limitation for all suits or actions. In 1913 the legislature of the State of New Hampshire enacted a law identical with the Standard Provisions statute of this State. At that time the policy involved in that case was in effect, and was renewed from time to time thereafter until March 3, 1916, when an action accrued. The question arose whether the limitation provisions of the contract or of the statute controlled, and the court held that upon renewal of the policy after the Standard Provisions statute went into effect the provisions of that statute must be read into the policy as renewed, and that the period of limitation was two years and not six months.

The policy in the *Hoyt case* was similar to the one here, in that it contained a provision to the effect that it might be renewed subject to the same conditions and payment of the premium, and a provision providing for amendment of the contract by a statute similar to the statute in this case. It was in that case pointed out that the effect of such provisions in the contract, together with the act later passed, brought about an amendment of the contract between the parties. This we believe to be the sound rule. When the policy in this case was renewed in 1916, and each year thereafter until the time of the accident, it was renewed subject to the provision in it that should any of its terms conflict with the statutes of the State, such terms were to be considered as amended in accordance with the statutes. We are of the opinion, therefore, that the two-year period of limitation applies in this case.

We come, then, to the defense of waiver. The only question we can consider on this review is whether there is

any evidence of waiver in the record. With the exception of one conference between defendant in error and a Mr. Harrold, representing plaintiff in error, the discussion of the matter was confined to correspondence, all of which appears in the record. Concerning the conversation, defendant in error testified that in June, 1919, he talked with Harrold concerning his claim, and Harrold said it would take time to consider it; that he would send the defendant in error the reports of the doctors on their examination of the cataract but that he did not do so until defendant in error later wrote for them, and that Harrold did not in this conversation, or at any other time, say that the company would not pay the claim. The latest date on which proof of loss could, under the terms of the contract, be sent to the company was March 26, 1919. This conversation occurred some three months after the proofs were due. Defendant in error, on cross-examination, testified that Harrold did not tell him that they would ever pay him anything but said that they wanted to do what was right. On September 29, 1919, defendant in error wrote Harrold that about three months had elapsed since the company had notified him that they would send him a copy of the reports of the physicians and inform him of the disposition the company wished to make of the claim, but that he had received no such word. On October 3, 1919, Harrold, to whom this letter had been referred, replied: "I was under the impression that these [the reports of the physicians] had been furnished you. I am enclosing copies of the same herewith as per your request, and hope that they will convince you that your condition was one due to the natural condition of failing sight together with age, and would not in anywise, and could not in anywise, be attributed to any fall or injury sustained in the manner described by you." The reports of the doctors were enclosed with this letter. No further communication took place between the parties until May 21, 1920, when defendant in error wrote as follows: "I have been

waiting a long time to hear from you as to how you wish to dispose of my claim, and I would like to know what you are intending to do, so that I can govern myself accordingly." On June 1 Harrold replied: "I was under the impression that I fully impressed you with the facts that the conclusive evidence which was received from the investigation and examination made, that your claim was not one that came within the coverage of an accident policy, and there has been no new development which would indicate a change of view. If there is any new information which you have other than that which has been submitted, we would be pleased to give the matter consideration." On June 8 defendant in error wrote an answer to Harrold's letter of June 1, as follows: "You at no time had me impressed that my claim was not just and right, and as to conclusive evidence, you may regard it as such. I do not. As you took your own time in looking the case up I have done the same, and now your company must settle the claim or we will let the court settle it for us. Now, I do not care to keep up a correspondence on this matter. If I do not get a settlement soon, you will hear from me in another way." To this letter Harrold replied on June 12: "It is understood that from the facts which you have submitted there can be no justification for any insurance company allowing the claim under an accident policy, your case being one purely of medical, which can be proven beyond any doubt is a senile cataract and not one the result of trauma. If you wish to submit to us any additional information that you have, and wish to do so with the understanding that the company does not waive any of their rights to any of the defenses under the policy, you are privileged to do so and the same will be given due consideration." The last communication or exchange of correspondence between the parties to this lawsuit was the letter of defendant in error written on June 14, 1920: "Your letter of June 12 received. In reply will say I have several affidavits, but as

I expect to have the parties here in person to testify, did not think it necessary to mention them. I also had a talk with Dr. Ingram, of Deland, Fla., before I left, and he was kind enough to say he would come to Illinois any time I needed him. You say it is purely medical, and can be proven beyond a doubt that it is a senile cataract and not one the result of trauma. Well, we will let a jury decide that. Not the doctors nor the company."

The period of limitation, computing two years from March 26, 1919, would expire on March 25, 1921. The last communication was nearly nine months before the expiration of the two-year period of the Statute of Limitations and fifteen months prior to the filing of suit, on September 30, 1921. The rule in this State and elsewhere, pertaining to waiver in a case of this kind, requires that the conduct of the party against whom such a waiver is claimed be such as to cause the other party to change his position by lulling him into a false security, thereby causing him to delay or waive the assertion of his rights to his damage. Negotiations for an adjustment of a claim which do not so justify the claimant in delaying action cannot estop the insurer from insisting upon a strict compliance with the conditions of the limitation. It is necessary and proper that claims of this character be investigated, and the fact that the insurer negotiates with the claimant is in nowise conduct amounting to a waiver by estoppel unless there is contained in the negotiation that which is calculated to lull the claimant into a false security. *Railway Passenger Conductors' Benefit Ass'n* v. *Loomis,* 142 Ill. 560; *Peoria Marine and Fire Ins. Co.* v. *Whitehill,* 25 id. 382; *Gorden* v. *Amoskeag Fire Ins. Co.* 20 N. H. 73.

We are of the opinion that the record of communications between these parties shows no act by the insurer inconsistent with its position stated in its letter of October 3, 1919, in which Harrold expresses the hope that the reports of the doctors "will convince you that your condition was

one due to the natural condition of failing sight together with age, and would not in anywise, and could not in anywise, be attributed to any fall or injury sustained in the manner described by you." Again, on June 1, 1920, he writes: "Your claim was not one that came within the coverage of an accident policy." Nowhere in the correspondence does any intimation appear on the part of the insurer's representative which can be construed as tending to lull the defendant in error into the belief that his claim would be paid. It is the rule in this State that where there is sufficient evidence to go to the jury, questions such as waiver are questions of fact and not reviewable here, but in this case we are unable to see in the record any evidence whatever of waiver, and the trial court therefore should have instructed the jury that there was no proof of waiver.

Under the views herein expressed it was error on the part of the trial court to refuse to take the case from the jury and to enter judgment on these policies, and the Appellate Court erred in affirming that judgment. The judgments of the Appellate and circuit courts are therefore reversed.

*Judgments reversed.*

Mr. JUSTICE THOMPSON, dissenting:

There being a right under this contract to keep it in force by the payment of an annual premium, the payment of the premium and the issuance of the receipt did not make a new contract of insurance. (*Mutual Benefit Life Ins. Co. v. Robertson,* 59 Ill. 123; *New England Fire and Marine Ins. Co. v. Wetmore,* 32 id. 221; *Herron v. Peoria Marine and Fire Ins. Co.* 28 id. 235.) The decision in this case being bottomed on the erroneous premise that the renewal of the policy is, in effect, a new contract of insurance, I cannot concur.