ALICE McMahon, individually and as Admr. of the Estate of John McMahon, Deceased, *et al.*, Plaintiffs-Appellees, *v.* CORONET INSURANCE COMPANY, Defendant-Appellant.

(No. 55578;

First District—July 5, 1972.

Haft, Shapiro & Haft, of Chicago, (Morris A. Haft, of counsel,) for appellant.

Herbert F. Stride, of Chicago, (William J. Harte and Kevin M. Forde, of counsel,) for appellees.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Alice McMahon, in her individual capacity and also as administrator of the estate of her late husband, John McMahon, deceased, and also Judith McMahon, her daughter, (plaintiffs) brought this action for declaratory judgment against Coronet Insurance Company (Coronet). Plaintiffs sought appointment of an arbitrator pursuant to a policy of automobile liability insurance previously issued by Coronet to the deceased. The court granted the prayer of the complaint and Coronet appeals, contending: 1) that plaintiffs failed to comply with policy conditions; 2) that the trial court erred in rejecting testimony from an expert called by Coronet and 3) that the court erred in denying Coronet leave to amend its answer. A factual statement is required.

On March 27, 1968, effective April 23, 1968, Coronet issued its automobile liability policy to the deceased. On June 17, 1968, deceased, his wife and his daughter attended a party given in connection with a grammar school graduation where they spent approximately four hours. About 10:30 P.M. they left for home. They stopped at a restaurant for about an hour for coffee. Then, they proceeded toward home on the Kennedy

Expressway. At or about the Lawrence Avenue interchange in Chicago, with the deceased driving, their automobile struck the divider and turned over several times. The deceased came to his death instantly. The wife and daughter both suffered injuries as a result of which they were in the hospital for approximately one month.

There is testimony that deceased had approximately two drinks that evening. There is also testimony that he was normal in appearance, conduct and conversation while the parties were driving home from the restaurant. The parties stipulated that analysis by a coroner's chemist showed that deceased had 2.05 milligrams percent of ethanol in his blood; and, further, that a biochemist, if called, would testify that with this alcoholic content deceased would be incapable of properly driving an automobile.

The only testimony actually received by the court for the purpose of determining the cause of the mishap was that of the wife and daughter. Both of them testified that, as they were driving in the left hand or inner south bound lane of the Expressway, an unidentified automobile forcibly struck the rear or right side of their automobile and that this caused the deceased to lose control. The other vehicle did not stop and immediately left the scene. They were unable to identify this automobile beyond describing it as dark in color and they could not provide any clue as to the identity of the driver. Remaining facts concerning the relationship and dealings between plaintiffs and Coronet will be stated as required.

Coronet's first contention actually intermingles several subsidiary points. The policy provides for insurance as a result of injury by an "uninsured automobile" which includes "a hit-and-run automobile." The term "hit-and-run automobile" is defined as including "* * * an automobile which causes bodily injury to an insured arising out of physical contact of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident * * *." We must note three conditions specifically contained in this definition. First, the identity of the operator or owner of the other automobile must be unascertainable. Second, the insured or someone in his behalf must report the accident to the police within 24 hours. Third, the insured shall file with the company within 30 days after the occurrence "* * * a statement under oath that the insured or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof * * *."

It is undisputed that this occurrence was reported to the Chicago Police on the same day thereof. A legal issue raised by Coronet is that the conditions of the policy have not been complied with because of

failure of plaintiffs to provide Coronet with a statement under oath within 30 days of the occurrence. It appears from the evidence that several days after the occurrence, before the wife had regained consciousness, another daughter called Coronet and gave them a report of the claim. Coronet then accordingly set up a reserve of $20,000. The wife called Coronet by telephone shortly after she had left the hospital. The daughter, one of the plaintiffs, completed and sent Coronet a comprehensive accident report upon a form provided by the company. This document was postmarked July 19, 1968, and stamped received by Coronet on July 22, 1968. A representative of Coronet came to the home of plaintiffs on August 6, 1968, and took statements from both plaintiffs which were transcribed by a court reporter. The agent then told plaintiffs that, "* * * we will keep in contact with you." In March of 1969, plaintiffs consulted an attorney who filed a notice of lien with Coronet. Coronet took no further action but closed its file in May of 1969 because of "inactivity."

Thereafter, plaintiffs retained their present counsel. On February 16, 1970, this counsel wrote to Coronet and advised them of the selection of an arbitrator by plaintiffs pursuant to the policy and requested that they proceed with appointment of their own arbitrator. On February 24, 1970, counsel for Coronet answered this letter and advised plaintiffs' attorney that it did not "* * * have in its possession all items of special damages which the assured has incurred * * *" so that it was not required to appoint an arbitrator. This communication also stated that after the sworn statement of plaintiffs had been taken, Coronet would be instructed to appoint its arbitrator if negotiation failed to produce an amicable settlement. This letter was sent approximately one and one-half years after the taking of the court reporter's statement of plaintiffs by Coronet.

Subsequently, and on May 13, 1970, counsel for plaintiffs obtained appointment of the widow as administrator of the estate of the deceased. The proceedings for declaratory judgment were filed by plaintiffs on July 10, 1970. Coronet filed its answer to the complaint on August 7, 1970. No allegation was made with reference to violation of policy conditions nor concerning the right of Coronet to have a sworn statement within 30 days in accordance with the policy. On August 20, 1970, plaintiffs filed a written motion for appointment of an arbitrator. On August 27, 1970, Coronet filed its answer to this motion. It alleged that plaintiffs had failed to comply with a condition of the policy, "* * * by refusing to submit to the Defendant items of special damages * * *."

■■ As a technical matter, it is true that plaintiffs did not comply

with the strict letter of the policy conditions by filing the sworn statement within 30 days. However, we have no problem in finding from this record that there was a waiver by Coronet of its right to literal compliance with policy conditions. This provision was placed in the policy for the benefit of Coronet. Therefore, it was within the power of Coronet to waive its right to receive such formal statement. In this case, the conduct of Coronet created in plaintiffs a reasonable belief that it was not necessary for them strictly to comply with the letter of this condition in the policy. Recital of the above facts and of the steps taken by Coronet shows that never, until the time of trial, did Coronet ever bring this policy provision to the attention of plaintiffs or require or request their compliance. Under the circumstances disclosed by this record, in view of the course of conduct engaged in by Coronet, we hold that compliance with this condition of the policy has been waived and abandoned. This is in accordance with an established doctrine of insurance law. In *Tarzian v. West Bend Mutual Fire Insurance Co.,* 74 Ill.App.2d 314, 326—327, 221 N.E.2d 293, this court held:

"The waiver need not be accomplished by the use of express words. It may be done by conduct inconsistent with an intention to enforce strict compliance with the conditions of the policy, which conduct is calculated to lead the insured to believe that the company did not intend to require compliance. Fray v. National Fire Ins. Co., 341 Ill. 431, 173 N.E. 479 (1930). It is aso the rule in Illinois that 'an insurer's denial of liability for loss claimed by an insured to come within the protection of the policy, such denial being based on grounds other than insured's failure to file proof of loss, waives or renders unnecessary compliance with the policy requirement respecting the filing of proof of loss.' Stoltz v. National Indemnity Co. of Omaha, 345 Ill.App. 495, 104 N.E.2d 320 (1952)."

See also, *Bert Jackson Motors, Inc. v. Chambers,* 114 Ill.App.2d 209, 252 N.E.2d 239.

In connection with this phase of the case, we note that Coronet filed a motion for summary judgment on October 7, 1970, when the case was called for trial. This motion was verified by trial counsel for Coronet. It raised the points presented to the trial court during the course of the trial and above considered; namely, whether the demand for appointment of an arbitrator made by counsel for plaintiffs on February 24, 1970 was sufficient under the policy; whether the statutory limitation period is applicable here to defeat the right of plaintiffs and whether plaintiffs had failed to comply with the policy condition requiring a statement under oath within 30 days from the insured or his legal representative.

■■■ The court refused to consider this motion on the ground that it had been filed too late. As a practical matter, this ruling would appear correct. The function of a motion for summary judgment is to determine whether a genuine issue of material fact exists so that a trial would not be necessary. Consequently, there would seem to be no point to making such a motion when the case was called for trial and when all of the parties were present with their witnesses. However, the pertinent statute provides that "* * * [a] defendant may, at any time, move with or without supporting affidavits for a summary judgment or decree in his favor as to all or any part of the relief sought against him." (Ill. Rev. Stat. 1969, ch. 110, par. 57(2).) Presumably, in view of this statute, the trial court should have given formal consideration to this motion. Actually, however, during trial the court did give careful consideration to each and all of the grounds set forth in the motion. Furthermore, as indicated, we find that the trial court arrived at a correct and proper conclusion regarding the merits of the motion.

The next point raised by Coronet in connection with this initial contention is that the statute of limitations in a death case creates a condition precedent to the bringing of the action and that plaintiffs have failed to comply with its terms. (See Ill. Rev. Stat. 1967, ch. 70, par. 2.) Manifestly this contention cannot apply to the action of the widow and the daughter individually for their own injuries but must be directed solely to the administrator's cause of action for wrongful death.

In this case, it was impossible for the administrator to bring any action to enforce her claim because she did not know the name or identity of the driver of the hit-and-run automobile. Thus she was unable to file suit in the ordinary manner. Without attempting to solve this problem, Coronet cites and depends upon the decision of this court in *Country Mutual Insurance Co. v. National Bank of Decatur*, 109 Ill.App. 2d 133, 248 N.E.2d 299. In that case, the awards made by an arbitrator were held properly vacated. The case is inapplicable here because no hit-and-run accident was involved and plaintiffs there neglected to file any proceedings or even to make any demand for arbitration until after the limitation period had expired.

■■ Coronet also urges that no formal demand for arbitration was ever made by any person duly authorized to act. We take this to mean that no formal demand for arbitration was made by a duly appointed administrator. In this particular instance, the provisions of the policy are applicable because, concerning arbitration, it provides that where settlement of the claim cannot be made "* * * each party shall, upon written demand of either, select a competent and disinterested arbitra-

tor." This provision of the policy should be liberally construed most favorably for the benefit of the insured. (*Deterding v. State Farm Mut. Auto Insurance Co.*, 78 Ill.App.2d 29, 36, 222 N.E.2d 523, citing *Caster v. Motors Insurance Corp.*, 28 Ill.App.2d 363, 171 N.E.2d 425.) The letter sent to Coronet by present counsel for plaintiffs on February 16, 1970, was, in our opinion, a sufficient compliance with this provision of the policy. In addition, the doctrine of waiver as above expounded is applicable here because in responding to this letter and request, counsel for Coronet, acting in its behalf, made no mention of the authority of counsel for plaintiffs to request arbitration but merely mentioned the necessity of obtaining items of special damages. Coronet's first point regarding failure of plaintiffs to comply with policy provisions and with the statutory period of limitations should be rejected in its entirety.

Coronet next contends that the trial court erred in refusing to hear testimony from a qualified expert. Defendant called one of its own appraisers as a witness. This man had been a property damage inspector for five years and prior to that time he had worked as manager of an automobile body shop. He examined the wrecked automobile nine days after the accident and took a series of photographs thereof which were received in evidence. The trial court, on objection made by counsel for plaintiffs, refused to permit this witness to testify as a reconstruction expert as to his opinion concerning whether or not the automobile had collided with another vehicle immediately prior to the mishap.

■■ In this case, there were two eyewitnesses to the occurrence. It is the law of this jurisdiction that in automobile cases the opinions of reconstruction experts "*  *  * may not be used as a substitute for eyewitness testimony where such is available. Whether it may be used in addition to eyewitness testimony is determined by whether it is necessary to rely on knowledge and application of principles of science beyond the ken of the average juror." (*Plant v. Holman*, 46 Ill.2d 465, 470-471, 264 N.E.2d 12.) Under the circumstances here presented, the trial court acted properly in excluding the opinion of the alleged expert.

■■ This issue was presented by the following question put by Coronet's attorney to its witness:

"Now, sir, do you have a recollection as to whether or not you may have had an opinion as to whether or not that particular '60 Dodge had contact with any other automobile?"

The court sustained plaintiffs' objection to this most equivocal and improper question. The point was then apparently dropped by trial counsel for Coronet. No offer of proof was ever made regarding the actual substance of the testimony. Thus, the point may not now be raised in

this court. *Miller v. Chicago Transit Authority*, 78 Ill.App.2d 375, 383-384, 223 N.E.2d 323, citing Cleary, Handbook of Illinois Evidence, Sec. 7.7.

We will add here that if the court had received this opinion evidence the result would not be changed. The additional testimony could, at most, create a conflict in the evidence. In such a situation, it would have been the duty of the trial court to determine and pass upon the credibility of the witnesses. The finding of the court that a hit-and-run accident actually occurred would then of necessity be affirmed by us as being not contrary to the manifest weight of the evidence. *Schulenburg v. Signatrol, Inc.*, 37 Ill.2d 352, 356, 226 N.E.2d 624.

Coronet next complains that the trial court erred in refusing to grant leave to amend its answer in order to raise the point that plaintiffs had failed to file a sworn statement within 30 days of the accident. This motion was made by trial counsel for Coronet after plaintiffs had rested their case. It is correct that our courts have been liberal in permitting amendment of pleadings. (*In re Estate of Gingolph*, 114 Ill.App.2d 363, 369, 252 N.E.2d 726.) It has frequently been held that the filing of amendments to pleadings is a matter within the discretion of the court and that this discretion should be liberally exercised. (*Adler v. Northern Illinois Gas Co.*, 57 Ill.App.2d 210, 219—220, 206 N.E.2d 816.) However, the test to be applied in delimiting the bounds of this discretion is whether the order entered by the trial court furthered the ends of justice. (*Bowman v. County of Lake*, 29 Ill.2d 268, 281, 193 N.E.2d 833.) In view of the conclusions above reached concerning strength of the evidence considered by the court regarding waiver and abandonment of this policy condition by Coronet, we conclude that filing of an amendment to the answer would have been an unnecessary and useless act. We find that the trial court acted properly in denying leave to amend.

The judgment in favor of plaintiffs and against Coronet for appointment of an arbitrator is, therefore, affirmed.

Judgment affirmed.

BURKE and LYONS, JJ., concur.