GEORGE E. TIBBS, Plaintiff-Appellant, *v.* GREAT CENTRAL INSURANCE COMPANY, Defendant-Appellee.

Fifth District    No. 77-158

Opinion filed January 31, 1978.

G. MORAN, J., dissenting.

Dixon, Starnes, Nester & McDonnell, of Belleville, for appellant.

Michael J. Nester, of Brady, Donovan & Hatch, of Belleville, for appellee.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

Plaintiff, George E. Tibbs, brought this action in the circuit court of Perry County to recover $12,000 allegedly owed him under a fire insurance policy issued by defendant, Great Central Insurance Company, for the fire loss of Tibbs' liquor store. The insurance company moved to dismiss the complaint on the grounds that Tibbs failed to file a proof of loss statement and failed to bring suit within the time periods required by the policy. Tibbs asserted that the insurance company's denial of liability under the policy, on the basis of Tibbs having been charged with arson in connection with the liquor store fire, operated as a waiver of the insurance company's right to assert these conditions as a defense to recovery. The lower court granted the insurance company's motion to dismiss, from which Tibbs brings this appeal.

The facts are not in dispute. Tibbs' Missouri liquor store was destroyed by fire on July 23, 1974. The fire insurance policy, under which Tibbs now claims, provides that Tibbs must file proof of loss within 60 days of the occurrence and must bring suit within one year. On August 1, 1975, more than a year after the fire, Tibbs' attorney wrote to the insurance company and asked whether Tibbs had ever filed proof of loss. On August 25, 1975, the insurance company replied that Tibbs had not submitted any proof of loss and that the company had no information about the fire. Approximately six months later, on February 18, 1976, the insurance company sent the following letter to Tibbs:

> "This letter is to advise you that Great Insurance Company hereby denies liability under the above captioned policy for a loss occurring on or about June 23, 1974, in view of an action filed

before Jack L. Jolly, judge of the magistrate court in and for the County of Butler, styled State of Missouri, County of Butler, State of Missouri-v-George Tibbs. This action arises out of facts which are in violation of the above captioned policy and it is because of those facts that this claim is being denied."

Thereafter on October 22, 1976, Tibbs brought the instant action.

On appeal, Tibbs contends that the letter of February 18 effected a waiver of Tibbs' failure to comply with the time limitations of the policy for submitting proof of loss and for bringing suit. The sole question presented is thus whether the letter sent after expiration of the time limitations restricts the insurer to the grounds asserted therein and waives the time limitations of the policy. We find that an affirmative answer to this question would be untenable under the circumstances.

■■ A waiver consists of a voluntary, intentional relinquishment by the insurer of a known right. (*Tarzian v. West Bend Mutual Fire Insurance Co.*, 74 Ill. App. 2d 314, 221 N.E.2d 293; *Allstate Insurance Co. v. National Tea Co.*, 25 Ill. App. 3d 449, 323 N.E.2d 521.) Estoppel, on the other hand, is generally based upon conduct of the insurer which misleads the insured to his detriment. (*Dickirson v. Pacific Mutual Life Insurance Co.*, 319 Ill. 311, 150 N.E. 256; but see *Bennett v. Union Central Life Insurance Co.*, 203 Ill. 439, 67 N.E. 971.) Implied waiver, since it arises from the conduct of the insurer, may be viewed as a concept based on either waiver or estoppel "for it exists when there is an intention to waive unexpressed, but clearly to be inferred from circumstances, or when there is no such intention in fact, but the conduct of the insurer has misled the insured into acting on a reasonable belief that the insurer has waived some provision of the policy." 43 Am. Jur. 2d *Insurance* §1054, at 978 (1969); see generally *Stoltz v. National Indemnity Co.*, 345 Ill. App. 495, 104 N.E.2d 320.

Tibbs urges, citing *Hansell-Elcock Co. v. Frankfort Marine Accident & Plate Glass Insurance Co.*, 177 Ill. App. 500, that the insurance company, by not raising the defenses in the letter, thereby waived them. Tibbs, however, cites no authority, and we have found none, to support the proposition that the insurance company was required to assert all its defenses in the letter. *Hansell-Elcock* is inconsistent with such a theory, and instead supports the insurance company's response that the defenses raised, by way of a motion to dismiss the complaint, were raised in a timely manner.

■■ The single operative fact relied upon by Tibbs is the insurance company's denial of liability on a ground unrelated to the defenses now asserted. With regard to the proof-of-loss provision, it is a general rule that a denial of liability made by the insurer *during* the period in which proof of loss is required to be filed, and which is made on grounds unrelated to the proof of loss, will be considered to be an implied waiver

of the proof of loss requirement. (*Stoltz v. National Indemnity Co.; Tarzian v. West Bend Mutual Fire Insurance Co.*) In such a situation, the denial of liability will have made the filing of such proof a futile gesture and it may therefore have misled the insured to omit furnishing the insurer with such proof. Moreover, the denial itself implies the insurer's knowledge of the loss and intention to waive any proof thereof. This rule, however, has no application where the denial is made *after* the expiration of the period for submitting proof of loss. (*Buysse v. Connecticut Fire Insurance Co.*, 240 Ill. App. 324.) In the case at bar, the letter could not have caused Tibbs to omit furnishing the proof of loss and the insurance company, having no knowledge of the loss during the period, certainly could not have intended during the period to waive its right to be informed. An implied waiver has also been found where, after expiration of the period for submitting proof of loss, the insurer requested the insured to engage in a course of conduct inconsistent with the assertion of the defenses and because of the request, it may be clearly inferred that the insurer intended to waive the failure to comply with the proof of loss provision. (See *Kenilworth Insurance Co. v. McDougal*, 20 Ill. App. 3d 615, 313 N.E.2d 673; *McMahon v. Coronet Insurance Co.*, 6 Ill. App. 3d 704, 286 N.E.2d 631 (where the insured complied with the insurer's request, made after the expiration of the period and with knowledge thereof, to submit statements about the occurrence).) In the case at bar, the letter cannot be construed as evidencing any intent by the insurance company to waive Tibbs' failure to comply with the proof of loss provision. The insurance company merely denied liability on a specified ground and such is not inconsistent with the subsequent assertion of other grounds.

■■ Similarly, the provision of a policy limiting the time in which suit may be brought, may also be waived, as where an insurer conducts negotiations with the insured for a settlement and thereby lulls the insured into a false security calculated to cause delay in bringing the action. (*Dickirson v. Pacific Mutual Life Insurance Co.*, 319 Ill. 311, 150 N.E.2d 256.) However, again we cannot find, in the case at bar, that the insurance company's denial of liability on an unrelated ground, made after expiration of the time limitation for bringing suit, implies any intention to waive the failure to comply, and certainly the denial could not have caused that which had already occurred. While there are jurisdictions in which stated public policy looks with disfavor on policy time limitations for bringing suit, one of which is Missouri (see *Asel v. Order of United Commercial Travelers of America* (Mo. App. 1946), 193 S.W.2d 74, *affirmed* (1946), 355 Mo. 658, 197 S.W.2d 639), the State in which plaintiff's insured property was located, plaintiff did not see fit to file suit in that jurisdiction. There exists no justification for Tibbs' delay of over a year in bringing this action, or in informing the insurance company of the

loss, and particularly none for which the insurance company may be held responsible. For the foregoing reasons, we find no error in the dismissal of Tibbs' complaint and accordingly we affirm the judgment entered by the circuit court of Perry County.

Affirmed.

CARTER, J., concurs.

Mr. JUSTICE GEORGE J. MORAN, dissenting:

Insurance policy provisions requiring proof of loss and limiting the time within which an action on the policy may be brought are inserted for the benefit of the insurer and therefore may be expressly or impliedly waived by words or conduct of the insurer inconsistent with an intention to demand compliance with such limitations. Since forfeitures of the rights of insured persons are not looked upon with favor by the courts, the doctrine of waiver has developed in order to avoid forfeitures in a variety of circumstances in which conduct by an insurer has indicated an intention to waive forfeiture. Generally, courts liberally construe in favor of the insured actions tending to show waiver. (J. Appleman, Insurance Law and Practice §9082 (1968).) In Illinois, an insurer's denial of liability for a loss on grounds other than a failure to comply with a proof of loss provision, generally operates as a waiver of the insurer's right to insist on strict compliance. (*Lumbermen's Mutual Insurance Co. v. Bell*, 166 Ill. 400, 45 N.E. 130; *Tarzian v. West Bend Mutual Fire Insurance Co.*, 74 Ill. App. 2d 314, 221 N.E.2d 293; *Stoltz v. National Indemnity Co.*, 345 Ill. App. 495, 104 N.E.2d 320; 22 Ill. L. & Prac. *Insurance* §433 (1956).) Similar acts or conduct by an insurer may also constitute a waiver of a policy provision limiting the time within which the insured may bring suit on the policy. (*Metropolitan Accident Association v. Froiland*, 161 Ill. 30, 43 N.E. 766.) Provisions which impose a period of limitation less than that mandated by the applicable statute are to be strictly interpreted, and only slight circumstances will be held sufficient to establish a waiver of these provisions. 22 Ill. L. & Prac. *Insurance* §526 (1956).

Defendant argues that plaintiff is not entitled to claim a waiver of a policy limitation unless there is some prejudice or detrimental reliance caused by the conduct of the defendant which constitutes the alleged waiver. In support of this proposition, defendant offers a number of Illinois decisions which have held that waiver of proof of loss clauses and limitation on actions provisions in insurance policies will not be inferred unless the insurer has engaged in conduct which has induced the insured to delay or forego an assertion of rights. (See *Dickirson v. Pacific Mutual Life Insurance Co.*, 319 Ill. 311, 150 N.E. 256; *Baxter v. Metropolitan Life*

*Insurance Co.*, 318 Ill. 369, 149 N.E. 243; *Stahly Cartage Co. v. Universal Mutual Casualty Co.*, 11 Ill. App. 2d 365, 138 N.E.2d 243.) In *Dickirson* the supreme court was faced with an alleged waiver of a period of limitation in an insurance policy. The court concluded that in order to constitute a waiver of this provision, the insurer's conduct must have been such as to cause the insured "to change his position by lulling him into a false security, thereby causing him to delay or waive the assertion of his rights * * *." (319 Ill. 311, 318.) According to the authorities cited by defendant, there is no distinction between the doctrines of waiver and estoppel in insurance cases. Under these decisions, an insured will not be permitted to claim a waiver of forfeiture unless the insurer's actions have induced the insured to forego or delay an assertion of his rights. One court has even held that it is necessary for anyone claiming waiver or estoppel to prove either fraud or perjury by the insurer. *Stahly Cartage Co. v. Universal Mutual Casualty Co.*, 11 Ill. App. 2d 365, 368, 138 N.E.2d 243.

Since the denial of liability was made after the period for filing proof of loss statements and bringing an action on the policy had expired, plaintiff could not have been induced to forego an assertion of rights under the policy because the conditions giving rise to forfeiture occurred prior to the alleged waiver of those conditions. Thus, under the reasoning advanced by defendant, plaintiff has no possible grounds for claiming waiver.

However, contrary to the authorities cited by defendant, it has been held in Illinois that there is a distinct difference between waiver and estoppel in insurance cases. (*Adam v. Columbian National Life Insurance Co.*, 218 Ill. App. 54.) Conduct of an insurer such as its recognition of the continuing validity of a policy after a breach of a condition has occurred, constitutes a waiver even though there has been no resulting disadvantage to the insured. (*Bennett v. Union Central Life Insurance Co.*, 203 Ill. 439, 67 N.E. 971.) Recent Illinois decisions have rejected the notion of waiver as requiring conduct by an insurer which causes some detrimental reliance by an insured. The United States District Court for the Northern District of Illinois has even identified a "distinct trend in more recent Illinois decisions toward liberalized interpretation of the waiver doctrine as applied to proof of loss clauses in insurance policies." *Muntwyler v. Ranger Insurance Co.*, 393 F. Supp. 795, 796 (N.D. Ill. 1975).

In *McMahon v. Coronet Insurance Co.*, 6 Ill. App. 3d 704, 286 N.E.2d 631, an insurance company in a suit on one of its policies asserted the defense of failure to file proof of loss within 30 days after more than two years of settlement negotiations with the insured prior to the filing of the suit. The court held that the defendant-insurer had waived its right to claim forfeiture by its conduct which evinced a clear intention not to insist on strict compliance with the proof of loss clause:

"As a technical matter, it is true that plaintiffs did not comply with the strict letter of the policy conditions by filing the sworn statement within 30 days. However, we have no problem in finding from this record that there was a waiver by Coronet of its right to literal compliance with the policy conditions. This provision was placed in the policy for the benefit of Coronet. Therefore, it was within the power of Coronet to waive its right to receive such formal statement. In this case, the conduct of Coronet created in plaintiffs a reasonable belief that it was not necessary for them strictly to comply with the letter of this condition in the policy." 6 Ill. App. 3d 704, 708-09.

The United States District Court for the Northern District of Illinois interpreted this application of the waiver doctrine as not requiring conduct by the insurer which has induced detrimental reliance by the insured:

"It is significant that in *McMahon* there is no evidence that the defendant insurance company did anything *within the original thirty day period* which could have misled plaintiffs into the belief that they need not file sworn proof of loss. * * * It must be inferred then, that the court necessarily based its finding of waiver on the insurance company's conduct over the entire course of negotiation and litigation." (Emphasis in original.) 393 F. Supp. 795, 797.

The *McMahon* court's construction of the waiver doctrine was followed in *Kenilworth Insurance Co. v. McDougal*, 20 Ill. App. 3d 615, 313 N.E.2d 673. Defendant-insurer in *Kenilworth* was held to have waived a general policy defense by its failure to insist on noncoverage when it had full knowledge of the facts relating to the defense. Like the *McMahon* court, the court in *Kenilworth* concluded that an insurer's failure to assert a policy defense or forfeiture about which it has knowledge, evidences an intention to waive such forfeiture or noncoverage. I agree with the views expressed in these opinions which have clarified the uncertainty in a number of Illinois decisions over the application of waiver and estoppel in insurance cases.

A much-quoted text on insurance law has defined waiver and estoppel in the following manner:

" 'Waiver' is the voluntary, intentional relinquishment of a known right. Such waiver may result from either affirmative acts of the insurer or its authorized representatives, or its non-action with knowledge of the facts. * * *

'Estoppel,' on the other hand, refers to an abatement raised by law of rights and privileges of the insurer where it would be inequitable to permit their assertion. It necessarily implies

prejudicial reliance of the insured upon some act, conduct, or non-action of the insurer. \* \* \*

Waiver arises by the act of one party; estoppel by the operation of the law. Waiver depends upon knowledge of the insurer; estoppel upon a prejudicial change or position by the insured. While they may co-exist, they are not identical in connotation." (J. Appleman, Insurance Law and Practice §9081 (1968).)

Thus, an insurer will be held to have waived a policy limitation where it has, through its conduct, evinced an intention to waive the limitation even though it has not done anything to disadvantage or cause prejudice to the insured. Whether or not there is a waiver in a particular case must be determined from the specific circumstances of that case. However, strong proof is not necessary to establish a waiver of a policy defense or forfeiture clause, but only such facts as would make it unjust or inequitable to allow the defense to be asserted. (*Vasilakis v. Safeway Insurance Co.*, 46 Ill. App. 3d 369, 374.) A waiver of forfeiture results from an insurer's unilateral conduct and no act of the insured is required to complete it. Thus, where an insurer, knowing of facts which would support a forfeiture, does not at that time insist on forfeiture, but instead recognizes the continuing validity of the policy, it will be held to have waived the defense to liability. *Vasilakis v. Safeway Insurance Co.*

The logic of this fundamental distinction between waiver and estoppel in the insurance field is grounded in the public nature of the insurance business and the special relationship between an insurer and an insured. Insurance is a public necessity and the insurance business is substantially affected with the public interest. (22 Ill. L. & Prac. *Insurance* §11 (1956).) It offers services of a quasi-public nature and is the subject of comprehensive governmental regulation. Our supreme court in a recent case involving automobile insurance held that in order for an insurer to establish a breach of a cooperation clause by an insured, the insurer must have been substantially prejudiced by the alleged breach.

"This is in accord with the general doctrine that prejudice must be shown by an insurer seeking to avoid responsibility because of an alleged breach of the cooperation clause in the policy. [Citations.]

\* \* \*

Proof of substantial prejudice requires an insurer to demonstrate that it was actually hampered in its defense by the violation of the cooperation clause. [Citation.]" (*M.F.A. Mutual Insurance Co. v. Cheek*, 66 Ill. 2d 492, 500, 363 N.E.2d 809.)

This interpretation of the effect of a cooperation clause is based on the special nature of the insurance relationship. As the supreme court noted:

" '[I]nsurance policies, in fact, are simply unlike traditional

contracts, *i.e.*, they are not purely private affairs but abound with public policy considerations * * *.' [Citation.]" *M.F.A. Mutual Insurance Co. v. Cheek*, 66 Ill. 2d 492, 501, 363 N.E.2d 809.

Thus, although an insurance contract is a voluntary commercial contract governed by the same rules as other contracts, its quasi-public character distinguishes it from ordinary commercial contracts. This has led to the creation of special rules of contract interpretation designed to protect the public interest. For instance, there is a strong policy against forfeiture of an insured's rights under an insurance policy and "courts are prompt to seize upon circumstances which indicate a waiver of forfeiture." (*Van Hulle v. State Farm Automobile Insurance Co.*, 44 Ill. 2d 227, 232, 254 N.E.2d 457.) Insurance contracts are thus construed in favor of indemnity and against forfeiture. (*Mack v. Liverpool & London & Globe Insurance Co., Ltd.*, 329 Ill. 158, 160 N.E. 222.) In addition, insurance companies are held to special standards of conduct commensurate with the public nature of their business. For example, when an insurer wishes to assert its nonliability under a policy it is under a duty to notify the insured without delay. (*Krutsinger v. Illinois Casualty Co.*, 10 Ill. 2d 518, 526, 141 N.E.2d 16.) These special rules of interpretation and standards of conduct have developed as a consequence of both the quasi-public nature of the business and the great disparity in the economic situations and bargaining positions of the insurer and the insured.

The relationship between the insurer and insured is unlike traditional contractual relationships in that an insured does not contract to secure a particular commercial advantage but rather to protect himself against the risk of accidental losses. A noted authority on insurance law suggests that this aspect of insurance contracts distinguishes them from contracts that are presumed to represent even exchanges.

"An inequality of values to be exchanged characterizes insurance since the premium paid by the insured unconditionally is ordinarily far less than the amount which the insurer may become obligated to pay on a contingency which will probably not occur. What does the insured get for his money? He gets only a promise by the insurer and may never have occasion to find out, by his own experience, whether that promise will be performed. He is therefore perhaps more gullible with respect to insurance and more susceptible to the wiles of the salesman." E. Patterson, Essentials of Insurance Law §1, at 2 (2d ed. 1957).

The inherent inequality of the insurance relationship is exacerbated by the inability of most insureds to understand the technical nature of insurance contracts, the economic necessity of mass production and sale

of contracts of insurance and the typical disparity in the financial strength of the parties. (E. Patterson §1, at 3.) The ultimate product of this relationship, therefore, is essentially a contract of adhesion. (R. Keeton, Basic Text on Insurance Law §6.3, at 350 (1971).) Freedom of contract simply does not exist in a typical relationship between an insurer and insured. "The contract is drawn up by the insurer and the insured who merely 'adheres' to it has little choice as to its terms." (E. W. Patterson, *The Delivery of a Life Insurance Policy*, 33 Harv. L. Rev. 198, 222 (1919).) The only real choice afforded the insured person is to accept the standard contract or refuse it and incur the risk of personal and economic loss from which the insured is seeking protection.

Courts therefore have a duty to construe insurance contracts so as to maintain some balance and fairness in the insurance relationship. The notion that an insurer may waive procedural limitations and forfeiture clauses inserted in a policy for its benefit whether or not an insured has relied on the insurer's actions to his detriment is a necessary concommitant of a balanced and fair insurance relationship. An examination of the procedural limitations asserted as a defense by defendant-insurer in this case illustrates the public policy objectives underlying this fundamental characteristic of the waiver doctrine.

A number of States have statutory prohibitions against contracts or agreements which require that suit on an insurance policy be brought within a period shorter than that prescribed by the applicable statute of limitations. (Annot., 6 A.L.R. 3d 1197, 1244 (1966).) Although the insurance contract involved here was executed and was to be performed in Missouri, and the fire loss occurred in Missouri, neither party has relied on Missouri law in this case. However, Missouri prohibits by statute contracts or agreements which either directly or indirectly limit the time in which an action may be brought. Missouri Revised Statutes 1972, section 431.030, provides:

"All parts of any contract or agreement hereafter made or entered into which either directly or indirectly limit or tend to limit the time in which any suit or action may be instituted shall be null and void."

The purpose of this section is to preserve the uniformity and integrity of Missouri statutes of limitation. (*Asel v. Order of United Commercial Travelers of America*, 193 S.W.2d 74 (Mo. App. 1946), *affirmed*, 355 Mo. 658, 197 S.W.2d 639 (1946).) This statutory provision against contractual limitations on actions applies to all contracts and agreements, including insurance contracts. (*Lumbermen's Mutual Casualty Co. v. Norris Grain Co.*, 343 F.2d 670 (8th Cir. 1965).) Great Central's letter denying liability under the Missouri policy failed to raise the limitation on actions provision

as a defense to plaintiff's claim. I assume that this defense to liability was not asserted in recognition of the fact that such limitations are invalid under Missouri law.

In Missouri, forfeiture of an insured's rights under an insurance contract for noncompliance with such procedural provisions as a proof of loss requirement is not favored and courts recognize a waiver of such requirements on only very slight evidence. (*M.F.A. Mutual Insurance Co. v. Quinn*, 259 S.W.2d 854 (Mo. App. 1953).) A denial of liability by an insurer within the time for making proof of loss waives the proof of loss requirement since it would be useless to require the insured to furnish proof of loss after liability has been denied. (*Cova v. Bankers & Shippers Insurance Co.*, 100 S.W.2d 23 (Mo. App. 1937).) This position is consistent with the trend in Illinois law and the general rule regarding the effect of a denial of liability on proof of loss requirements.

> "[I]t has generally been held that a denial of liability or refusal to pay not predicated on the failure to furnish proofs is a waiver of any objection on that ground, irrespective of whether the denial precedes or follows the time within which proofs should have been furnished * * *." (45 C.J.S. *Insurance* §1045, at 1269 (1946).)

See also *Asel v. Order of United Commercial Travelers*, 193 S.W.2d 74, 84 (Mo. App. 1946), *affirmed*, 355 Mo. 658, 197 S.W.2d 639 (1946), quoting from 33 C.J. *Insurance* §694, at 33-34 (1924).

Proof of loss provisions in fire insurance policies require the insured to give written notice that he is asserting a cause of action against the company. The insured must report those facts regarding the fire loss necessary to establish the liability of the company under the policy. Proof of loss requirements facilitate the insurer's investigation of the accident, help prevent fraud and allow the insurer to formulate an intelligent evaluation of its rights and liabilities prior to its obligation to pay. The proof of loss requirement does not relate to the substantive elements of insurance coverage but is rather a procedural requirement designed to facilitate an insurer's evaluation of its potential liability under a substantive provision of the insurance contract. If an insurer denies liability on a substantive ground prior to the filing of a proof of loss statement, the insurer obviously has informed itself of the facts which support its potential liability through some means other than the proof of loss statement. The insurer in this situation has rejected liability as a result of its independent evaluation of the occurrence, thus obviating the need for a proof of loss statement. To require a proof of loss statement after a denial of liability on substantive grounds would thus be a needless exercise. Moreover, to allow an insurer to assert the failure to file a proof of loss statement as a defense to an action on the policy when it has previously denied liability on substantive grounds would allow insurance

companies to employ the proof of loss requirement in an arbitrary and oppressive manner that is wholly inconsistent with a balanced and fair insurance relationship. The serious implications of such a broad construction of the proof of loss requirement are evident in this case.

Approximately one year after the accident plaintiff's attorney wrote defendant Great Central Insurance Company inquiring whether plaintiff Tibbs had filed a proof of loss statement. Great Central replied that it had received no proof of loss statement and that it had no knowledge of the circumstances of the fire. Great Central later denied liability on the basis of plaintiff having been accused of arson, stating that the charge arose "out of facts which are in violation of the above captioned policy and it is because of those facts that this claim is being denied." Defendant also noted in this letter that it was advising plaintiff's attorney of the decision to deny liability. Defendant was thus well aware of the facts supporting its potential liability under the policy, of the expiration of the proof of loss period, and of plaintiff's intention to pursue his claim under the policy. Defendant never requested plaintiff to file a proof of loss statement because it had already taken a position on the question of liability. Yet defendant now asserts the failure to file a proof of loss statement as a forfeiture of plaintiff's rights and absolute defense to its own liability. The trial court's acceptance of defendant's procedural claim contravenes the strong policy against forfeiture in Illinois and is patently unfair to plaintiff. This unfairness does not arise out of any special detriment suffered by plaintiff which would support a claim of estoppel, but is rather an inevitable consequence of a contractual relationship which is inherently unbalanced and susceptible of great abuse.

Imposition of the proof of loss requirement at this stage will not serve the purpose for which it was designed but will instead allow defendant to escape liability on a technicality that is in fact unrelated to the substantive elements of the insurance contract. The requirements of notice and proof of loss in insurance policies are intended to serve the practial purpose of enabling an insurer to undertake the investigation necessary to defend a claim against it. (See *Kenworthy v. Bituminous Casualty Corp.*, 28 Ill. App. 3d 546, 328 N.E.2d 588; *Vignali v. Farmers Equitable Insurance Co.*, 71 Ill. App. 2d 114, 216 N.E.2d 827.) This requirement was inserted to aid the defendant in its investigation of fire losses and evaluation of potential liability and was given effect by the provision allowing defendant to claim a forfeiture in the event of a breach of the requirement. Allowing the defendant to assert forfeiture under this provision for a purpose totally unrelated to that for which it was inserted and after defendant has evidenced a clear intention to waive the requirement, is condoning an arbitrary exercise of defendant's right of forfeiture which is totally inconsistent with a fair and balanced insurance relationship. Application

of the waiver doctrine in this situation is mandated by the policy against forfeiture and by the court's duty to define the limits of the insurance relationship and impress upon the parties the duties they owe to each other as well as the duties they owe to the public.

Defendant's assertion of plaintiff's breach of the limitation on actions provision as an absolute defense to liability presents a similar issue. The purpose of such limitations is to afford the insurer a reasonable opportunity to investigate the facts upon which a claim against it is based. Since these provisions normally impose a period of limitations substantially less than that required by the applicable statute of limitations, they are strictly construed and allowed to be readily waived. 22 Ill. L. & Prac. *Insurance* §526 (1956).

The Illinois Supreme Court in *Geneva Construction Co. v. Martin Transfer & Storage Co.*, 4 Ill. 2d 273, 289-90, 122 N.E.2d 540, has examined the purposes and effects of statutes of limitations in a discussion which has considerable relevance to the issues in this case.

> "Statutes of limitation, like other statutes, must be construed in the light of their objectives. The basic policy of such statutes is to afford a defendant a fair opportunity to investigate the circumstances upon which liability against him is predicated while the facts are accessible."

The court then quoted Justice Holmes from his noted opinion in *New York Central & Hudson River R.R. v. Kinney*, 260 U.S. 340, 346, 67 L. Ed. 294, 296, 43 S. Ct. 122:

> "Of course, an argument can be made on the other side, but when a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the Statute of Limitations do not exist, and we are of the opinion that a liberal rule should be applied."

Plaintiff's attorney contacted defendant-insurer nine days after the one-year limitation period on bringing actions had expired. Although the defendant could have raised the limitation period at that time and claimed a forfeiture of plaintiff's rights, it declined to do so and instead denied liability approximately seven months later on the basis of facts which it claimed were in violation of the policy. As with the proof of loss requirement, defendant's denial of liability on substantive grounds indicates that the need for the strict limitation on actions no longer existed. The denial of liability was the product of defendant's evaluation of the facts surrounding the fire. Defendant's assertion of the limitation period at this point is not based on the fact that defendant has not been afforded a fair opportunity to investigate the circumstances upon which his liability is predicated. Defendant has investigated the matter and has made a determination of plaintiff's rights based on that investigation. The

assertion of the limitation period after defendant has evidenced a clear intention to waive this requirement is rather an attempt to invoke a forfeiture of plaintiff's rights in a situation in which forfeiture is neither consistent with the needs and legitimate rights of the insurer nor with the fair and balanced insurance relationship which is the objective of the scheme of insurance regulation in Illinois.

I would hold, therefore, that an insurer may not deny liability on grounds other than noncompliance with limitation periods, and then at a later date assert noncompliance with these limitations as a defense to an action on the policy, if at the time the insurer denied liability, it had knowledge of the defense and could have raised it. Under the circumstances of this case, I believe that defendant waived its right to claim forfeiture on the grounds asserted.

I would reverse the judgment of the trial court.