George M. Tarzian, et al., Plaintiff-Appellees, v. West Bend Mutual Fire Insurance Company, a Corporation, et al., Defendants-Appellants.

Gen. No. 50,176.

First District, Third Division.

August 12, 1966.

Rehearing denied October 20, 1966.

Clausen, Hirsh, Miller & Gorman, of Chicago, for appellants.

Robert A. Sprecher and Lucian D. Levacarre, of Chicago, for appellees.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

This is an action by three partners, who were engaged in the business of designing and manufacturing machinery, upon fire insurance policies issued to them by the defendants, West Bend Mutual Fire Insurance Company and Badger Mutual Insurance Company. The action sought recovery for damage to four items of special machinery being built by the plaintiffs under a contract

with the United States Air Force by reason of a fire occurring March 8, 1957, in an adjoining building. The damage was inflicted by debris from the adjoining building falling upon the machinery which was located in the rear yard of the plaintiffs' premises. A portion of the damage occurred during the early stages of the fire; another portion was inflicted during the course of wrecking operations ordered by the City of Chicago on the adjoining building.

The plaintiffs filed their complaint in December 1957, claiming there was due from the defendants a sum in excess of $9,214.50 and asking a total of $15,000 damages. Their amended complaint, filed in 1961, asked for a total of $50,000 damages. In each complaint the plaintiffs alleged the issuance of the policies, that the machinery was damaged as a direct result of the fire and that they had complied with all of the conditions of the policies except as to the filing of a timely proof of loss, but that compliance with this condition had been waived by the defendants. The defendants' answer admitted the issuance of the policies but denied that the loss was a direct result of the fire and that there had been a waiver of the proof of loss requirement.

In both complaints there were additional counts alleging that the Cleveland Wrecking Company, which was engaged by the City of Chicago to demolish the adjoining building, negligently performed the wrecking operations causing a portion of a wall to fall upon the machinery; that the City of Chicago and its Deputy Fire Commissioner, Albert H. Petersen, improperly ordered the demolition of the adjoining building, and that the owners and tenants of that building negligently operated the building thus causing the fire which damaged the machinery. All of these allegations were denied by the respective defendants.

When the case was called for trial, the plaintiffs settled with the owners and tenants of the adjoining building for

$3,000 which amount, by stipulation, was to be subtracted from any amount awarded by the verdict. As to these claims the defendants waived any subrogation rights granted to them under the fire insurance policies. After a jury was selected to try the remaining counts there were further settlement negotiations. As a result of these negotiations a mistrial was declared and the counts against the City of Chicago, the Cleveland Wrecking Company and Deputy Fire Commissioner Petersen were severed and submitted to the court sitting without a jury. The court entered judgment on the severed counts in the amount of $5,000. As to this amount the defendant insurance companies did not waive their subrogation rights.

The case then proceeded to trial against the insurance companies before a new jury. At the close of all the evidence the trial court directed a verdict against the defendants and the jury assessed the amount of the damage at $12,750. From this amount the court deducted the $8,000 received from the other defendants and added to the $4,750 balance interest and attorney fees for unreasonable and vexatious delay in payment of the plaintiffs' loss. The total amount was apportioned between the two defendant companies according to the coverage of their respective policies and judgments were entered against them.

The defendants contend that the trial court erred in directing a verdict against them, in not directing a verdict in their favor and, alternatively, in not submitting the case to the jury in that the policy requirement concerning the filing of the proof of loss had not been complied with and had not been waived. They also contend that the loss was plainly excluded from the coverage of the policies; that the policies were rendered void because of the fraud and false swearing of the plaintiffs in connection with their proof of loss, their examination under oath and their testimony at the trial; that the plaintiffs were not the owners of the claim because prior to the trial they had

transferred the partnership assets to a corporation; that the agreed judgments against the City and Cleveland Wrecking Company destroyed their subrogation rights against those parties and thus precluded the plaintiffs from maintaining this action, and that the award of interest and attorney fees was error.

The plaintiffs argue that the defendants are estopped from raising points in this court pertaining to the exclusion from coverage, the alleged false swearing, the ownership of the claim and the loss of subrogation rights because such matters are affirmative defenses which were not pleaded by the defendants as required by the Civil Practice Act (Ill Rev Stats (1963) c 110, § 43(4)). We will consider the plaintiffs' argument and will take up in order each of the above defenses.

First of all, as to the exclusion from coverage: the case was tried by both parties on the issue of whether the loss was excluded from the coverage of the policies, and it does not appear to us under the circumstances of this case that the effect of the exclusion clause, hereinafter discussed, was affirmative matter required to be set forth specifically in the defendants' answer.

 While it is a general rule that a party will not be permitted to argue on appeal a defense not interposed by his answer (Ariola v. Nigro, 16 Ill2d 46, 156 NE2d 536 (1959); Consoer, Townsend & Associates v. Addis, 37 Ill App2d 105, 185 NE2d 97 (1962)) various exceptions have been developed to prevent any injustice resulting from its strict application. A defendant may avail himself of a defense which he fails to plead if it is introduced by his adversary, particularly where the defendant prior to trial did not have information enabling him to plead the defense. See 41 Am Jur, Pleading, § 118, p 371; 71 CJS, Pleading, § 101, p 248, and the cases cited therein. The rationale of this exception would seem to be consistent with that of section 43(4) of the Civil Practice Act: any matter known to the defendant which would be

likely to take the plaintiff by surprise should be set forth, but if unknown to the defendant prior to trial he likewise should be protected from surprise.

The next affirmative defense pertains to the alleged false swearing of the plaintiffs. The sworn proof of loss tardily filed by the plaintiffs on June 21, 1957, claimed that the cost of labor to repair the damaged equipment to that date was $7,614 and that the approximate labor and material to complete the repair was $837.50. On August 27, 1957, the plaintiff Tarzian was examined under oath, in accordance with the provisions of the policy, and testified that the labor charges to that date were $8,235 and that actual material cost was $700.57. At the time of his testimony only one of the four components had not been shipped to the Air Force. At the trial, however, he testified that the labor cost for repairing the four components was $35,838.90, although the material cost remained at $700.57. The defendants claim that the gross variance between Tarzian's earlier testimony and his testimony at the trial brings into play the fraud provisions of the policy which provided that in case of "any fraud or false swearing by the insured" whether before or after a loss, the entire policy shall be void.

In Insurance Companies v. Weides, 14 Wall 375, 20 L Ed 894 (1872) the United States Supreme Court said:

"It is true the policies stipulated that fraud or false swearing on the part of the insured should work a forfeiture of all claim under them. The false swearing referred to is such as may be in the submission of preliminary proofs of loss, or in the examination to which the assured agreed to submit. But it does not inevitably follow from the fact that there was a material discrepancy between the statement made by the plaintiffs under oath in their proofs of loss, and their statements when testifying at the trial that

321

the former were false, so as to justify the court in assuming it, and directing verdicts for the defendants. It may have been the testimony last given that was not true, or the statements made in the proofs of loss may have been honestly made, though subsequently discovered to be mistaken. It is only fraudulent false swearing in furnishing the preliminary proofs, or in the examinations which the insurers have a right to require, that avoids the policies, and it was for the jury to determine whether the swearing was false and fraudulent."

In American Paint Service v. Home Ins. Co. of New York, 246 F2d 91, 64 ALR2d 957, the court followed the Weides case, reasoning that the purpose of the fraud clause is to protect the insurer during the settlement period and that when the claim was in suit the insurer and the claimant were no longer on a nonadversary basis, and stated:

"To permit insurer to await the testimony at trial to create a further ground for escape from its contractual obligation is inconsistent with the function the trial normally serves. It is at the trial that the insurer must display, not manufacture, its case."

The general rule is stated this way in Couch on Insurance, Vol 14, § 49.555:

"Generally speaking, in order to constitute a defense within the meaning of the fraud clause contained in a fire insurance policy, the fraudulent acts of the insured must occur before the trial, the false swearing provision not applying to perjury at the trial, but only to false swearing in the furnishing of proof of loss and in examinations which the insurer has the right to require."

But cf.: Weininger v. Metropolitan Fire Ins. Co., 359 Ill 584, 195 NE 420 (1935) ; Kavooras v. Insurance Co. of

Illinois, 167 Ill App 220 (1912); Tenore v. American & Foreign Ins. Co., 256 F2d 791 (7th Cir 1958). It follows that Tarzian's testimony at the trial however surprising and even if proved to be false, does not create a new defense on the ground of fraud. A fraud sufficient to avoid the policy was committed, if at all, in furnishing the proof of loss or in the examination under oath. Both of these events took place prior to the filing of the complaint, were known to the defendants and if they wished to put fraud in issue as a ground to avoid the policy it was necessary for them to have pleaded it. They did not do so and we therefore will not consider this defense. Of course, if the evidence brought out by the plaintiffs at the trial had revealed for the first time falsity in the proof of loss or false swearing in the examination under oath, and if the defendants had had no prior information which would have enabled them to plead the defense in their answer, they would not be precluded from asserting the defense even though it had not been pleaded affirmatively. These facts would have brought the defense within the exception to the general rule which we discussed heretofore. But there was no evidence to this effect. We also concur in the finding made by the trial judge when, at the close of all the evidence, he denied the defendants' motion for a directed verdict on this issue: "[O]n the point that you made that there was fraud; the evidence does not sustain either a willful misrepresentation or concealment or any false swearing, . . . there is—has been no proof of any such conduct on the part of the plaintiffs."

■ ■ The third affirmative defense concerns the ownership of the claim. The business of the plaintiffs was incorporated and the plaintiffs became the officers and stockholders of the successor corporation. The corporation subsequently became bankrupt. On cross-examination, one of the plaintiffs testified:

"Q. The partnership was incorporated? And were the assets of the partnership transferred to the corporation?

"A. Yes, they were."

From this fragment of testimony the defendants argue that "assets" include the claim of the plaintiffs, that the claim was assigned to a corporation and the plaintiffs no longer have an interest in the cause of action. Assuming that this defense was introduced by the testimony of the plaintiff and that the defendants would not have obtained information pertaining thereto prior to the trial (a situation we deem unlikely in view of the liberal discovery provisions of our Civil Practice Act) nevertheless, the evidence on this point, all of which we have quoted, is insufficient to raise an issue of the ownership of the cause of action. If it is sufficient to raise the issue it certainly is insufficient to meet the burden upon the defendants to prove their affirmative defense. The plaintiffs made a prima facie case on the issue of their ownership of the claim by introducing the policy issued to the partnership and identifying themselves as the parties. The burden of proving that they were not entitled to recover because of a change in ownership was upon the defendants. Killion v. Modern Woodmen of America, 202 Ill App 525 (1916).

The last of the affirmative defenses is the defendants' claim that their right under the policy to require from the insured an assignment of all right of recovery against the City of Chicago and the Cleveland Wrecking Company has been destroyed by the "agreed" judgments and that the self-created inability of the plaintiffs to comply with this condition of the policy precludes them from maintaining an action against the defendants. This affirmative defense arose immediately prior to the trial and is available to the defendants under these circumstances without pleading. As a general rule, if an

324

insured settles with one primarily responsible for the loss and releases him fully from all liability, such release destroys the insurer's right to subrogation and is a complete defense to an action on the policy. 16 ALR2d, p 1269; 29A Am Jur § 1735, p 811. The purpose of the policy provision is, of course, the protection of the insurer from unilateral or fraudulent action of the insured which effectively deprives the insurer of the ability to recover payments made by it under the insurance contract. Just as other provisions of a policy designed for the protection of the insurer may be waived, so also may the subrogation provisions be waived. Despite the specific nonwaiver by the insurer, we find that as a matter of law the provision has been waived.

Within three days of the fire, the adjuster representing the defendants, who had already admitted liability for the loss inflicted during the early stages of the fire, specifically denied liability for any damage caused by the wrecking. He suggested that the plaintiffs go after the wrecking company for the damage caused by the razing operations. He requested copies of the plaintiffs' communications with the company. The wrecking company and the City of Chicago were parties to this suit from its inception, and the defendants participated with them in the settlement negotiations after a jury had been selected. The mistrial was declared after there was some indication by the defendants' counsel that the case would be settled, and it was only after he reported that he was unable to get an authorization for settlement that the plaintiffs proceeded to the previously agreed judgments against the City and the company.

 The action by the plaintiffs against the City and the wrecking company was encouraged, if not instigated, by the defendants and they were aware of the progress of the litigation. The defendants permitted the plaintiffs to prosecute and control this litigation and it was only when a settlement not to their satisfaction was arrived

at that they took the position that their contractual rights were affected. There is no suggestion that the settlement was unfair or fraudulent and it in fact was approved by the trial court. The insurance companies' knowledge and acquiescence in the plaintiffs' course of conduct constitutes a waiver of their right to demand an assignment of the plaintiffs' cause of action, and their refusal to formally waive this right cannot change the legal effect of their behavior. As was said in Powers v. Calvert Fire Ins. Co., 216 SC 309, 57 SE2d 638, 16 ALR2d 1261 (1950):

> "An insurer will not be permitted to profit from such a course of conduct. It cannot sit down and hold its hands and purse and thereafter escape liability for fulfillment of its contract by reason of the insured's effort, after fair notice, to recover his loss by litigation against a wrongdoer."

We conclude that there was no error on the part of the trial court in not directing a verdict for the defendants, and in directing a verdict for the plaintiffs, on the unpleaded affirmative defenses.

The defendants next contend that the failure to file a sworn proof of loss within sixty days after the loss, as required by the policy, was a breach of the policy and a complete defense to the action. The plaintiffs contend that the requirement was waived. A condition in a fire insurance policy requiring proof of loss within a specific period after the date of a fire is valid and the failure to comply with this requirement will relieve the insurer of liability. Miller v. Milwaukee Mechanics' Ins. Co., 181 Ill App 133 (1913). An insurer may waive the policy provision as to proof of loss. Commerce Union Bank v. Midland Nat. Ins. Co., 43 Ill App2d 332, 193 NE2d 230 (1963). The waiver need not be accomplished by the use of express words. It may be done by conduct inconsistent with an intention to enforce strict compliance

326

with the conditions of the policy, which conduct is calculated to lead the insured to believe that the company did not intend to require compliance. Fray v. National Fire Ins. Co., 341 Ill 431, 173 NE 479 (1930). It is also the rule in Illinois that "an insurer's denial of liability for loss claimed by an insured to come within the protection of the policy, such denial being based on grounds other than insured's failure to file proof of loss, waives or renders unnecessary compliance with the policy requirement respecting the filing of proof of loss." Stoltz v. National Indemnity Co. of Omaha, 345 Ill App 495, 104 NE2d 320 (1952).

In the instant case notice of the fire loss was received by the defendants the morning of the fire and their adjuster visited the scene that afternoon, but prior to the time that the wrecking operations commenced. He testified that he observed some damage to the components which he estimated to be approximately $1,000. He did not deny the liability of the defendants for the losses incurred up to that time. Three days later he was told by the plaintiffs of the further damage incurred during the wrecking operations, and he advised the plaintiffs that such damage was excluded under the policy and liability for such damage was denied. No timely proof of loss was filed for either aspect of the damage.

A similar partial denial of liability was involved in the Stoltz case, supra. There a fire insurance policy was issued which on its face purported to insure a tractor only. The plaintiff claimed that a trailer also was intended to be included in the policy. Both tractor and trailer were demolished in one casualty. The insurance carrier denied that the trailer was covered by the policy. The plaintiff sued for reformation of the insurance contract, was successful and recovered judgment for both tractor and trailer. The insurance company contended that the failure to file proofs of loss barred recovery, but the court said: "The facts show that the defendant

admitted liability as to the tractor but denied liability as to the trailer immediately following the loss, claiming that the trailer was not covered by the policy. Under such circumstances it would have been a useless act for the plaintiffs to have filed proofs of loss."

 We believe that the principle enunciated in the Stoltz case is controlling here. The unequivocal denial of the far greater portion of the loss was equivalent to a statement that a proof of loss would not be accepted and considered by the insurance companies and therefore to have filed it for a lesser amount would have been futile. An unreasonable burden would have been placed upon the insured to separate, at their peril, those items of damage as to which proof of loss was waived from those items as to which proof of loss was required under the penalty of being barred from the benefits of their insurance contract. It is a sounder and fairer view not to permit an insurer to pick and choose as to which items or portions of items of damage it will require or not require proofs of loss. The trial court was correct when it held as a matter of law that the requirement as to proof of loss had been waived by the defendants.

The policies issued by the defendants insured the plaintiffs "against all direct loss by fire" to the property damaged, but provided further that the defendants "shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by . . . order of any civil authority except acts of destruction at the time of and for the purpose of preventing the spread of fire. . . ." Both parties have construed this exclusion clause as applying to the destruction ordered by the City on the adjacent premises and the case was tried and decided by the trial court upon this construction. The trial court determined that the fire was still burning at the time of the destruction; that, as a matter of law or of judicial notice, there was a danger of its rekindling and spreading, and that one of the purposes of the destruction

was to prevent the fire from spreading. In accordance with this view the court directed a verdict in favor of the plaintiffs. To review this determination requires a review of the evidence.

The fire in the building next door to the plaintiffs' occurred in the early morning hours of Friday, March 8, 1957, and was of serious proportions. Over forty fire department units and two hundred firemen responded to fire alarms between 3:58 and 4:48 a. m. Deputy Fire Marshal Petersen was in charge of the fire-fighting. He "struck out" the fire at 6:39 a. m. He testified that this meant that the fire was absolutely under control and extinguished for all practical purposes; that at this time most of the floors of the multiple-storied structure had collapsed and any remaining fire was buried and covered with debris but was still smoldering.

All the fire-fighting units except those which were required to overhaul the ruin were then returned to quarters. "Overhaul" was a standard fire procedure because of the requirement that the fire department extinguish fires to the last spark before leaving the premises. Overhauling involved chopping into the debris, exposing the embers and extinguishing them. Two fire companies and a batallion chief, comprising fourteen men, remained at the scene until the morning of March 9th.

About 8:00 a. m. on March 8th, Petersen recommended that the walls of the fire building be torn down because they were in a dangerous condition and a hazard to traffic. He testified that his recommendation was not made in order to prevent the spread of fire but was for safety purposes only. The City of Chicago then employed the Cleveland Wrecking Company to remove and destroy the fire building. The wrecking commenced about 3:45 p. m., the same day and the walls were leveled by 8:30 a. m. the following morning.

The three plaintiffs and a City building inspector testified that they observed the fire burning at various

times throughout the day until 4:00 a. m. on March 9th, with firemen hosing down the ruins. Petersen returned to the scene the afternoon of March 8th and saw no flames, although he did observe smoke. The defendants' adjuster and a coworker were there from about 2:00 to 4:30 p. m. on March 8th and saw no burning or flames. Various photographs were admitted into evidence, the earliest showing the scene about 7:30 a. m. on March 8th; none of them show flames or fire.

Prior to 7:30 a. m. on March 8th, part of the wall of the fire building fell upon the machinery stored in the rear yard of the plaintiffs' plant. During the course of the wrecking additional bricks and coping fell on the two items of machinery which remained in the yard and by the next morning these two were covered with brick and rubble. The other two components were dragged out of the yard by the wrecking company and suffered damage in the course of the moving.

 The test to be applied to a motion for a directed verdict is whether there is in the record any evidence or reasonable inferences arising therefrom which tend to prove the case of the party against whom the motion is directed. In a jury trial, the court cannot weigh the evidence or the inferences but must resolve all controverted questions of fact in favor of the party who opposes the motion. The credibility of the witnesses and the weight of their testimony are questions for the jury. Home Indemnity Co. v. Reynolds & Co., 38 Ill App2d 358, 187 NE2d 274 (1962). There are two basic conclusions that must be reached for the exclusion clause to be applicable—destruction at the time of the fire *and* destruction for the purpose of preventing the spread of the fire. Both of these are primarily conclusions of fact and we are unable to agree with the trial court that only a question of law was presented.

 The jury could have found that the fire was out, or that it was absolutely under control as testified

330

by Petersen, and had ceased to exist as a hostile element at the time the wrecking operation was commenced and that it was, therefore, not a fire within the meaning of the policy. Even if the jury found that the fire did exist at the time of the wrecking, by concurrently finding that it was under control it could reasonably conclude that there was no danger of its rekindling or spreading, and thus could give full weight to the testimony of Petersen that the wrecking was ordered to prevent the walls toppling into the public streets and not to prevent the spread of fire. The conclusion of the trial court that one of the purposes for which the wrecking was ordered was preventing the spread of fire, regardless of whether it was in Petersen's mind or not, was predicated upon hypothesizing the existence of a fire within the meaning of the policy and the danger of its spreading. While such an hypothesis and conclusion are reasonable they are not exclusively so. A verdict should not have been directed in favor of either side and the case should have been submitted to the jury.

 The trial court awarded interest on the amount of damages awarded by the jury, finding that the defendants had been guilty of unreasonable and vexatious delay of payments (as provided by statute, Ill Rev Stats (1963), c 74, par 2) and attorney fees in the amount of $500 (as provided by section 155 of the Insurance Code, Ill Rev Stats (1963), c 73, par 767). No Illinois case has been cited to us, and our own research has discovered none, involving the applicability of the exclusion clause of the policy. Insofar as the defense of the suit was based on this clause our review of the evidence leads us to believe that it was interposed in good faith. The defendants were entitled to their defense thereon without penalty. First Nat. Bank of Highland Park v. Boston Ins. Co., 17 Ill App2d 159, 149 NE2d 420 (1958). Interest and attorney fees should not have been awarded on the basis of unreasonable and vexatious delay. Inasmuch as the case

must be retried, the trial court may consider at the new trial whether interest is allowable under some other statutory provision and whether additional costs should be assessed against the defendants under applicable provisions of the Civil Practice Act.

The judgment is reversed and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded with directions.

SULLIVAN, P. J. and SCHWARTZ, J., concur.