Anthony KOCLANAKIS, etc., Plaintiff,

v.

**MERRIMACK MUTUAL FIRE INSURANCE CO., Defendant.**

No. 87 C 9892.

United States District Court,
N.D. Illinois, E.D.

Oct. 13, 1988.

---

Michael Childress, Timothy Travers, Tenney & Bentley, Chicago, Ill., for plaintiff.

Frank L. Schneider, Clausen Miller Gorman Caffrey & Witous, P.C., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Anthony Koclanakis ("Koclanakis"), owner and operator of Pan–Olympian Travel Agency ("Pan–Olympian"), asserts Merrimack Mutual Fire Insurance Co. ("Merrimack") has refused to pay for a burglary loss covered by a Merrimack-issued "Special Businessowners Policy" (the "Policy"). Merrimack has now moved for summary judgment under Fed.R.Civ.P. ("Rule") 56. For the reasons stated in this memorandum opinion and order, the motion is granted and this action is dismissed.

### Facts [1]

Illinois citizen Koclanakis invokes this Court's diversity jurisdiction against Merrimack, a Massachusetts corporation with its principal place of business in that state. Merrimack sold Koclanakis the Policy covering Pan–Olympian [2] for various contingencies for the year beginning July 9, 1985.[3] Sometime during the evening of February 4 or the early morning of February 5, 1986,[4] a burglary occurred at Pan–Olympian.

Koclanakis promptly submitted a claim under the Policy, and Merrimack assigned

---

**1.** Familiar Rule 56 principles impose on the movant the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). For that purpose this Court draws all "reasonable inferences, not every conceivable inference" in the light most favorable to the nonmovant—in this case Koclanakis (*DeValk Lincoln Mercury, Inc. v. Ford Motor Co.,* 811 F.2d 326, 329 (7th Cir. 1987)). Documents submitted by Koclanakis and Merrimack will respectively be identified as "P." (for plaintiff) and "D." (for defendant).

**2.** Both Koclanakis and Merrimack speak of Pan–Olympian as though it is a sole proprietorship, and the Policy itself identifies Pan–Olympian (the named insured) with an "x" in the box labeled "Individual" rather than the boxes indicating a corporation, partnership or some other

entity. However, Koclanakis has also submitted two exhibits suggesting Pan–Olympian may have been incorporated:

    1. Its letterhead identifies the business as "Pan–Olympian Travel Agency, Inc." (Koclanakis Aff. Ex. 1).

    2. Its unaudited balance sheet speaks of "Pan Olympian Travel, Inc." (Koclanakis Aff. Ex. 2).

Fortunately any possible ambiguity in that respect is of no concern, for Pan–Olympian's precise status is immaterial to the decision on the current motion.

**3.** Essentially the Policy is an "all-risks" type with specified exclusions from coverage.

**4.** All other dates mentioned later also occurred in 1986 unless otherwise noted.

John Bray ("Bray," an insurance adjuster with R.S. Rozak & Company) to handle the matter. Bray met with Koclanakis on February 10 and took a tape-recorded statement from him on how the burglary occurred and what items were lost.

In part Koclanakis identified such stolen items as a filing cabinet and portable typewriter, as to which Bray and Merrimack have never disputed Policy coverage. On July 18 Bray offered Koclanakis $1,654, representing the replacement cost of those items ($2,891) less depreciation ($737) and the policy deductible ($500). Koclanakis could recover the withheld depreciation if he actually replaced any of the stolen items.

Merrimack was less willing to extend coverage to the remaining items Koclanakis said were stolen: a number of rare coins and stamps, various items of jewelry and $5,300 in cash (33 $100 bills and two $1,000 bills). Second Amended Complaint ("Complaint") ¶ 9 puts the total value of those remaining items at $25,000. Merrimack, through Bray, balked at compensating Koclanakis for that loss without proof that the items were the property of Pan–Olympian rather than of Koclanakis personally.

On May 9 Bray told Koclanakis he would have to provide documentation showing the stolen items (including the cash) were business rather than personal assets (Bray Dep. 85–86). Koclanakis had previously sent Bray a receipt covering the $3,300 in $100 bills.[5] Koclanakis also explained the other $2,000 in cash represented "savings" for emergency use, accumulated over the years and not traceable to a particular receipt (Koclanakis Aff. Ex. 1). Save for a Pan–Olympian balance sheet (discussed shortly), Koclanakis has never come up with backup documentation for any of the other items he claims as business property.[6]

On July 18 Bray sent Koclanakis the already-mentioned settlement offer with this accompanying note (D.Ex. A):

> You have not given me any books, records, or other data that would establish ownership of the coins, stamps, jewelry, 100 and thousand dollar bills in the name of [Pan–Olympian Travel] Agency. You said this could be done during our 5/9/86 meeting. Attached is an offer of settlement on those stolen items which readily appear to be used in the conducting of business by [Pan Olympian Travel] Agency.

Bray also enclosed a "Sworn Statement in Proof of Loss" for Koclanakis' signature. That form called for Koclanakis to swear to the cause of the insured loss, the business' title to and interest in the covered property and the value of the lost items.

Koclanakis gave no response, and Bray sent an August 22 follow-up letter (D.Ex. B). After noting Koclanakis' failure to tender any further evidence of Pan–Olympian's ownership of the contested items, the letter went on:

> The purpose of this letter is to advise you that I am post dating my file 30 days from the date of this letter. If the additional request [sic] data is not received from you, then I will assume that it is not possible for you to establish ownership of the various classes of items by the Pan–Olympian Travel Agency. If that turns out to be the case, then I would also urge you to sign the proof of loss and replacement cost agreement and return them to me.

On August 28 Koclanakis responded with a letter of his own, asking Bray not to close his file and saying he would be mailing the receipts in a week (D.Ex. B–1). Koclanakis also said "enclosed you will find the statement," apparently referring to a one-page January 31, 1986 balance sheet for Pan–

5. That receipt, though barely legible, appears to date from April 1980, almost six years before the burglary. Koclanakis has not explained why he would have kept the currency at his office for all those years.

6. Bray's notes taken during his February 10 interview with Koclanakis say the latter ex-

plained his stamp collection was purchased over many years during his trips to Europe. That certainly suggests the stamps were Koclanakis' personal property, thus supporting Bray's and Merrimack's desire for evidence explaining why the stamps and other items should be protected by a business insurance policy.

Olympian prepared by Computer Accounting Service ("Service") from Pan–Olympian's books (D.Ex. C). That balance sheet included as assets "cash on hand" of $5,300 and "other investments (stamps and gold coins)" of $12,060.

Bray was not satisfied by that skeletal financial statement, prepared without audit and uncertified by the accountant. Bray wrote Service on October 3 (D.Ex. D), asking whether it could certify any aspect of the balance sheet and whether, with Koclanakis' permission, it would forward Pan–Olympian's last tax returns (which might identify the contested items as business assets). On October 16 Service responded (D.Ex. E), stating Koclanakis had not given it permission to release his tax returns and explaining the audit was not certified because of the expense of that procedure for a business of Pan–Olympian's size.

Bray next heard from Terry Chiganos ("Chiganos"), Koclanakis' attorney (who is not Koclanakis' counsel in the current litigation). Chiganos reasserted Koclankis' position that the contested items were assets of Pan–Olympian and said (D.Ex. F):

> It is our intention to vigorously pursue this matter and take whatever steps necessary to insure fair and full compensation under the terms of the policy for the loss incurred.

On December 3 Bray answered Chiganos (D.Ex. G), stating (1) the burden of proof was on Koclanakis, who had failed to support his claim on the contested items, and (2) Bray was accordingly "powerless to assist him in resolving any settlement on those items." Bray did, however, go on to direct a December 11 "Examination Under Oath" of Koclanakis. Bray said Koclanakis could establish Pan–Olympian's ownership of the contested items by bringing various documentation to the examination.

It is uncontested that Koclanakis and Chiganos failed to appear for the examination at the appointed hour on December 11. From there the factual dispute begins. Chiganos swears he never received notice of the December 11 examination (Chiganos Aff. ¶ 3). Merrimack says Koclanakis not only failed to appear but failed to explain his nonappearance (D.Mem. 3), but it does not substantively undercut Chiganos as to the reason for that failure. In any event, the reasons for Koclanakis' nonattendance recede in importance because Bray proceeded to reschedule the examination: On December 11 he hand-delivered to Chiganos a copy of the December 3 letter and a new letter rescheduling the exam for December 18 "as a courtesy to the insured and yourself [Chiganos]" (D.Ex. H).

On December 17 Chiganos called Bray to say Koclanakis would be unable to attend the next day's examination (Bray Dep. 134). Again the parties' versions of events conflict. Chiganos says he told Bray that Koclanakis could not make the December 18 appointment because of a scheduling conflict (Chiganos Aff. ¶ 6). According to his version, he asked for still another rescheduling and Bray said he would reach Merrimack and let Chiganos know (id.). Bray, however, says Chiganos cancelled the December 18 examination because Koclanakis was not ready to appear (Bray Aff. ¶ 19) and Chiganos did not offer to reschedule the examination (Bray Dep. 155). Both sides agree on one point: Neither side made any effort to reschedule from December 18 to the following March.

In March 1987 Chiganos wrote to Bray that Koclanakis had suffered a heart attack in January but he would like to reschedule the examination under oath "as soon as his health permits" (D.Ex. I). Bray forwarded the letter to Merrimack. On April 6, 1987 Merrimack's property claims examiner Dale Ober ("Ober") wrote to Chiganos (D.Ex. J):

> We have reviewed our file for this loss and have concluded that since the insured failed to appear for an examination under oath and the time for filing suit has expired, we will be unable to give this claim any further consideration.[7]

---

7. [Footnote by this Court] As is discussed later in the text, the Policy required any suit to be filed within one year of the loss.

Koclanakis then took his claim to this Court by filing suit November 17, 1987. After his pleading was twice dismissed for failure to allege diversity of citizenship, the Complaint was filed December 8, 1987.[8]

### Parties' Arguments

Merrimack advances three grounds in support of its motion for summary judgment:

1. Koclanakis cannot assert a claim under the Policy because he failed to submit a sworn proof of loss.

2. Koclanakis failed to satisfy a second precondition for claiming coverage under the Policy by failing to appear for an examination under oath.

3. Koclanakis failed to bring his suit within one year of the loss, as also required by the Policy.

Koclanakis responds to those contentions in turn:[9]

1. On the first, he maintains alternatively (a) he did submit an adequate proof of loss and (b) Merrimack has either waived or is estopped from asserting the argument.

2. As for the examination, he denies having refused to appear.

3. As for the third argument, he again answers in the alternative:

(a) Suit was in fact timely filed because of the application of an Illinois statutory tolling provision.

(b) Merrimack has either waived or is estopped from asserting the one-year filing deadline.

This opinion treats matters in a slightly altered order.

### Examination Under Oath

■ Merrimack's claim of Koclanakis' refusal to appear for an examination under oath is readily disposed of. To be sure, Policy at 18 required such an appearance if Merrimack requested it:

In the case of loss, the named insured shall ... submit to examination under oath.

But the obvious factual dispute on the issue precludes summary judgment.

Had Koclanakis unquestionably refused Merrimack's request, Merrimack might well have been entitled to summary judgment.[10] But the Chiganos affidavit negates a Koclanakis refusal:

1. It reflects nothing more than a failure to communicate over the first appointment and a scheduling conflict over the second (Chiganos Aff. ¶¶ 3–4, 6).

2. It also places responsibility for rescheduling on Bray rather than Kocla-

---

8. Merrimack Mem. 6 mysteriously asserts Koclanakis did not file suit until December 16, 1987. Whatever the source of that date, the relevant date for any statutory or contractual limitations period is November 17, 1987, the date of original filing. Both earlier dismissals extended only to Koclanakis' pleading, not to the case as a whole.

9. Merrimack R.Mem. 1–3 suggests this Court should strike Koclanakis' "purported Response" to Merrimack's motion because (a) the brief was one week late, (b) Koclanakis filed no statement of contested factual issues as required by this District Court's General Rule 12(f) and (c). Koclanakis misled this Court by submitting uncorrected deposition extracts from Bray. Merrimack's Draconian suggestion is rejected on each score:

1. Even the Lord High Executioner in "The Mikado" would be unlikely to deny a litigant's request for a one-week briefing extension or (the equivalent) to strike a brief for such mild tardiness. This Court surely will not.
2. Although General Rule 12(f) allows a litigant's noncompliance to result in the

deemed admission of the adversary's General Rule 12(e) statement, that action will not be taken here. For one thing, Merrimack's own statement has itself violated General Rule 12(e) by not providing references to the factual record to support its numbered assertions. For another, the factual scenario in this case was not terribly complicated, and this Court was not hampered by Koclanakis' omission.
3. Koclanakis' submission of uncorrected deposition extracts is certainly not to be commended, but it does not appear his memorandum has referred to any parts of the Bray deposition affected by the corrections.

10. This proposition must be hedged in terms of "might well have been" rather than "would have been," in light of case law Koclanakis submits in connection with the proof of loss issue. Those cases, referred to later in this opinion, suggest the proper remedy for an insured's failure to submit to an examination is to order such submission rather than to deny the claim outright.

nakis (or Chiganos as his lawyer) (*id.* ¶ 6).

Though Merrimack paints events in a different light (see Merrimack R. Mem. 5–8), the very existence of a factual dispute defeats its motion.

### Proof of Loss

■ Policy at 18 includes this among the "DUTIES OF THE NAMED INSURED AFTER A LOSS":

In case of loss, the named insured shall:

\* \* \* \* \* \*

(c) prepare an inventory of damaged personal property showing in detail the quantity, description, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

\* \* \* \* \* \*

(e) submit to the Company within 60 days after requested a signed, sworn statement of loss which sets forth, to the best of the named insured's knowledge and belief:

(1) the time and cause of loss;

(2) interest of the insured and all others in the property involved and all encumbrances on the property;

\* \* \* \* \* \*

(6) an inventory of damaged personal property described in (c) above; ....

Such a proof-of-loss requirement is a valid precondition to recovery under an insurance policy (see *Tarzian v. West Bend Mutual Fire Insurance Co.*, 74 Ill.App.2d 314, 326, 221 N.E.2d 293, 299 (1st Dist.1966)).

Bray included a proof-of-loss form for Koclanakis to complete when he tendered the settlement offer on July 18 (D.Ex. A). Nonetheless, Koclanakis Aff. ¶ 5 states:

Mr. Bray never requested I submit a formal proof of loss for the property I claimed was stolen.

That conclusory assertion is insufficient to create a factual issue over whether Bray in fact requested a proof of loss. Koclanakis nowhere disputes his receipt of either the July 18 letter enclosing the proof-of-

loss form or Bray's August 22 letter with its specific reference to Koclanakis' need to sign the form (indeed, his own August 28 letter (D.Ex. B–1) expressly says he received the August 18 letter). If Koclanakis has to depend on the absence of a proof-of-loss request, he loses.

When that nonissue is brushed aside, the real questions emerge: whether Koclanakis provided enough information to satisfy the proof-of-loss requirement or, if not, whether Merrimack is somehow foreclosed from asserting that Policy provision.

Koclanakis Mem. 4–6 insists he submitted an adequate proof of loss by conveying the relevant information to Bray in their first meeting on February 10. To that end Koclanakis urges that an insurer possessing adequate information from the insured cannot insist on the technicality of a formal proof of loss. *First National Bank of Highland Park v. Boston Insurance Co.*, 17 Ill.App.2d 159, 164, 149 N.E.2d 420, 422 (1st Dist.1958) says this on the subject:

Proofs of loss could have given them no information that they did not already have. Since there is no requirement that proofs of loss be on any particular prescribed form if the information furnished is adequate and sufficient to inform the insurer as to the nature and extent of the loss, we think the information that defendants already had constituted an adequate proof of loss under the policy provisions.

That same notion was echoed more recently as to a proof-of-loss requirement in *Piro v. Pekin Insurance Co.*, 162 Ill.App.3d 225, 229, 113 Ill.Dec. 220, 223, 514 N.E.2d 1231, 1234 (5th Dist.1987):

A breach which will defeat recovery cannot be based upon technical or unimportant omissions or defects in performance.

Where Koclanakis fails is in the application of those abstract *First National Bank–Piro* principles to this case. Koclanakis' failure to provide a more detailed or formal proof of loss cannot by any stretch of the imagination be termed a "technical or unimportant omission." At issue was whether the stamps, coins and other items

were the property of Pan–Olympian. Bray knew what Koclanakis claimed had been stolen, but Bray was properly insisting on documentation showing those items belonged to Pan–Olympian—and *that* was not information Bray already had. Koclanakis never did submit an adequate proof of loss in those terms.

■ But Koclanakis is saved from summary judgment on the issue by his waiver/estoppel argument. *Tarzian*, 74 Ill. App.2d at 326–27, 221 N.E.2d at 299 (citations omitted) speaks of proof-of-loss waiver in these terms:

> The waiver need not be accomplished by the use of express words. It may be done by conduct inconsistent with an intention to enforce strict compliance with the conditions of the policy, which conduct is calculated to lead the insured to believe that the company did not intend to require compliance.

In December, when Bray twice scheduled the Koclanakis examination under oath, he told Chiganos that Pan–Olympian's ownership of the contested items could be established by Koclanakis' submitting to the examination and bringing the necessary documentation to the session (see D.Ex. G). Koclanakis Aff. ¶ 6 similarly states:

> Mr. Bray said he would reconsider his position on my claim after the examination under oath.

Indeed, Bray admits telling Chiganos he would reconsider his position as to non-coverage of the contested items if Koclanakis supplied the documentation that Bray had requested he bring to the examination under oath (Bray Dep. 132–33). That evidence is enough to create a factual issue as to whether Koclanakis was led to believe the submission of a formal proof of loss was not a precondition to consideration of his claim. If so, Koclanakis' claim is not defeated by his failure to tender such a document.

■ Such a denial of Merrimack's summary judgment motion on the proof-of-loss issue is consistent—for an independent reason—with *Piro*, 162 Ill.App.3d at 229–30, 113 Ill.Dec. at 223, 514 N.E.2d at 1234. As indicated earlier (see n. 10), *Piro* (citing with approval *C–Suzanne Beauty Salon, Ltd. v. General Insurance Co. of America*, 574 F.2d 106, 110–11 (2d Cir.1978)) suggests a court should not grant an insurer summary judgment for an insured's failure to provide a proof of loss or to submit to an examination, but should instead simply order the insured's compliance. Then the insurer can renew its request for summary judgment if it has been prejudiced by the delay in the insured's compliance.

In this instance, however, there is no need to tread the path marked out by *Piro* as to either Koclanakis' provision of a formal proof of loss or his submission to a sworn examination. That intermediate step is unnecessary because Merrimack prevails on its third argument, discussed next in this opinion.

### Contractual Limitation on Filing Suit

■ Policy at 19 imposed a one-year deadline on filing suit:

> No suit shall be brought on this policy unless the insured has complied with all the policy provisions and has commenced the suit within one year after the loss occurs.

Like proof of loss and a sworn examination, such a one-year filing limitation is a valid condition to insurance coverage (see *Florsheim v. Travelers Indemnity Co. of Illinois*, 75 Ill.App.3d 298, 303, 30 Ill.Dec. 876, 881, 393 N.E.2d 1223, 1228 (1st Dist. 1979)). There is no disputing that Koclanakis' November 1987 filing was far beyond the first anniversary of the February 1986 burglary. His only potential escape from the contractual bar depends on the availability of (1) the shelter of an Illinois statutory tolling provision or (2) an estoppel against Merrimack's assertion of the one-year deadline.

On the first of those possibilities, Ill.Rev. Stat. ch. 73, ¶ 755.1 provides:

> Whenever any policy or contract for insurance ... contains a provision limiting the period within which the insured may bring suit, the running of such period is tolled from the date proof of loss is filed, in whatever form is required by the poli-

cy, until the date the claim is denied in whole or in part.

Koclanakis can draw no comfort from that provision: He never satisfied the precondition for statutory tolling because, as already discussed, he never filed a proof of loss "in whatever form is required by the policy."

As for estoppel, that doctrine can clearly operate against an insurer when it would be "unjust, inequitable and unconscionable" to allow it to interpose a limitations defense (*Downing v. Wolverine Insurance Co.*, 62 Ill.App.2d 305, 316, 210 N.E.2d 603, 608 (2d Dist.1965)). *Salloum Foods & Liquor, Inc. v. Parliament Insurance Co.*, 69 Ill.App.3d 422, 429, 26 Ill.Dec. 399, 404, 388 N.E.2d 23, 28 (1st Dist.1979) (citations omitted) sets out the operative principles:

> Equitable estoppel ... generally is based upon an insurance carrier's conduct and/or representations which mislead an insured to his detriment.... Thus, if an insurance carrier's investigation and/or negotiation of a policy claim reasonably induces within the insured a false sense of security—namely, that the claim will be settled without suit—and the insured, in reliance thereon, foregoes filing suit during the policy's limitation period, the insurance carrier is estopped from later raising the limitation provision as a defense to an action on the policy.

Accord, *Issa v. Reliance Insurance Co. of New York*, 683 F.Supp. 82 (S.D.N.Y.1988); *Issa v. Reliance Insurance Co. of New York*, 685 F.Supp. 47 (S.D.N.Y.1987) (a different action between the same parties). As with the statutory tolling provision, it is self-evident that Koclanakis does not qualify in those terms.

Koclanakis has come forward with no evidence even hinting he was lulled into letting the contractual limitation period expire. He was told all along—and therefore had to know—that his claim would be denied if he did not come forward with additional evidence proving the disputed items were covered by the Policy. It is of no moment that what he labels his first notice

of Merrimack's denial of his claim (Merrimack Claims Examiner Ober's April 1987 letter) arrived two months beyond the expiration of the limitations period. Merrimack's denial was implicit—if not indeed explicit—in all of Koclanakis' and Chiganos' earlier conversations with Bray. And if Koclanakis and his counsel inexplicably had any residual doubts on that score, Bray's August 22 and December 3 letters again made it crystal clear that Merrimack would not cover the contested items without documentation showing those items were Pan–Olympian's property. It is disingenuous to label that sequence of events as a nondenial of the claim.[11]

Nor was Koclanakis misled by any settlement discussions with Bray. All of Bray's communications about settlement concerned only the undisputed items clearly connected to Pan–Olympian. Bray never gave any indication settlement was even under consideration for Koclanakis' claim for the stolen cash, stamps, coins and jewelry. Clearly Koclanakis is in a totally different position from insureds such as the plaintiff in *Downing*, who was misled by his insurer into letting the time run for filing suit.

Finally, that ground for Merrimack's success is unaffected by the quarrel over who had the laboring oar to reschedule the examination under oath. Even if Koclanakis' version of that matter having been left to Bray is credited arguendo, Koclanakis was still not relieved of his obligation to meet the one-year filing deadline. He is charged with the knowledge that the Policy contained a one-year filing limitation (*Florsheim*, 75 Ill.App.3d at 307, 30 Ill.Dec. at 884, 393 N.E.2d at 1231). After the December 18 examination was cancelled, he remained bound to recognize that he had only two months within which to file suit under the Policy. Whether or not it was his responsibility to reschedule the examination, it was his duty to file suit by the deadline to protect his rights.

Thus no material disputed issue of fact vitiates Koclanakis' failure to observe the

---

**11.** It is also worth noting that Koclanakis waited some seven months even *after* Ober's April 1987 formal denial of coverage before this lawsuit was filed.

filing limitations period set by the Policy. Merrimack is entitled to summary judgment.[12]

### Conclusion

Disputed outcome-determinative factual issues exist over whether Koclanakis complied with the Policy requirements for a proof of loss and his submission to an examination under oath. But no such issue exists over Koclanakis' failure to file his suit within one year of the occurrence of his loss, as the Policy mandates. Merrimack is entitled to a judgment as a matter of law, and this action is therefore dismissed.

---

**12.** Lest Koclanakis unjustifiably perceive himself as having lost this suit merely because of his "technical" noncompliance with a filing deadline, it bears mention that on the record tendered to this Court no predicate appears for his succeeding on the substance of his claim. As made clear earlier, Merrimack has maintained from the start that the contested items were not covered by the Policy because they were not the property of the insured, Pan–Olympian. In the face of that, Koclanakis has provided no evidence (save possibly for the receipt discussed in n. 5) indicating the disputed items were other than his personal property. This Court need not pause to analyze whether that essential element of his claim is one whose absence would defeat him under *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53. Whether or not that is so, it assuredly seems a safe assumption that any evidence Koclanakis has on that score has already been tendered in the discovery process. If so, his position on the merits would appear to be a sure loser.