**M.E. FIELDS and J.R. Fields, Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, a Delaware and Michigan corporation, Defendant.**

**No. 94 C 4066.**

United States District Court, N.D. Illinois, Eastern Division.

July 3, 1996.

William H. Kelly, Jr., Gerald Berton Mullin, Ira M. Levin, Rosenthal & Schanfield, P.C., Chicago, IL, for plaintiffs.

Richard Cartier Godfrey, Thomas E. Dutton, John Robert Robertson, Gabriela Isuani Monahan, Kirkland & Ellis, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Plaintiffs, Earl and John Fields, have brought suit against General Motors Corporation ("GM"), alleging that GM breached an oral contract it made with them. GM has moved for summary judgment on a variety of

different theories. For the reasons stated below, GM's motion is granted.

### Background

From 1971 until 1985, the Fields operated an automobile dealership in Evanston, Illinois through a closely-held corporation known as Fields Cadillac, Inc. ("Fields Cadillac"). Fields Cadillac was appointed by GM's Cadillac Division as an independent Cadillac Dealer pursuant to several Dealer Sales and Service Agreements ("DSSA"). Under the DSSA, the Fields were the "Dealer Operators" and "Dealer Owners" of Fields Cadillac. They were also shareholders in Fields Cadillac.

In 1982, Fields Cadillac began experiencing a decline in sales. From 1982 to 1985, the Fields considered purchasing another Cadillac dealership, relocating Fields Cadillac to another location, or adding another major franchise to the Evanston facility. When none of these options came to fruition, the Fields considered selling the Evanston property to a third party and having Fields Cadillac terminate its DSSA. According to the Fields, GM had promised them that they would be granted a new Cadillac dealership in the future if Fields Cadillac voluntarily terminated its DSSA.

On March 25, 1985, GM wrote the Fields a letter in which it stated that

> Cadillac [GM] will give consideration to the applications of Messrs. M.E. Fields and J.R. Fields as candidates for a Cadillac dealership that may become available in an area of mutual interest. Cadillac cannot guarantee that the very next available point would be granted to either party. However, Cadillac will consider both parties as being preferred candidates for available points which match their qualifications.

The Fields contend that this letter did not correctly express the agreement between them and GM. They claim that GM promised to grant them the next available Cadillac dealership.[1] The Fields say that in reliance on GM's promise, they caused Fields Cadillac to voluntarily terminate its DSSA in November, 1985.

Despite GM's alleged promise that the Fields would get the next available Cadillac dealership, in 1986 GM established a Cadillac dealership in Port Richey, Florida but did not give it to the Fields. Although the Fields believed that, by failing to give the Port Richey dealership to them, GM had broken its promise, the Fields took no action. According to the Fields, GM assuaged their protests by explaining that it needed to appoint a dealer operator pursuant to its minority recruitment program. GM allegedly promised the Fields again that they would get the next available Cadillac dealership.

In 1988, however, Earl Fields learned that GM had approved another Cadillac dealership in Jupiter, Florida. Again this dealership was not given to the Fields. Earl Fields testified that when he asked GM why the Fields had not been given the Jupiter dealership, "[t]hey said it was out of their hands." He further testified that because the Jupiter dealership was being given to someone else he "very definitely" believed that GM had broken its promise to give the Fields the next available Cadillac dealership. The Fields took no action, however, because they still believed that GM would give them a Cadillac dealership.

In June of 1992, the Fields wrote to GM and demanded that, because they had not been given a replacement Cadillac dealership, GM compensate them for the value of the Cadillac dealership given up by Fields Cadillac.[2] GM responded with a letter explaining that it did not agree that it had promised the Fields a Cadillac dealership in exchange for a voluntary termination of the Fields Cadillac DSSA. This suit followed on June 8, 1994.

---

1. The Fields were allegedly promised the next available dealership, except for one then being established in Austin, Texas. That dealership had already been promised to someone else when GM made its alleged promise to the Fields. Thus the Fields understood "next available" to mean the first one after Austin.

2. The letter was actually from M.E. Fields, Inc., the successor corporation to Fields Cadillac, and signed by John Fields in his capacity as Vice-President.

GM has moved for summary judgment, based on several defenses. Because I find that the Fields have not stated a claim for promissory estoppel and that their complaint is barred by the statute of limitations, GM's motion is granted.

### Standing

GM first argues that the Fields do not have standing to pursue this claim because the damages they seek belong to Fields Cadillac, not to them individually. The Fields respond that they have standing to assert their claims because GM promised another Cadillac franchise to them as individuals. GM agrees that the alleged promise was to the Fields as individuals. GM argues that the Fields cannot succeed in this lawsuit, however, because the only damages they could recover are damages that were suffered by Fields Cadillac—the value of the franchise agreement and the "goodwill" or "blue sky" value of Fields Cadillac. The Fields concede that these assets belonged to Fields Cadillac before they were given up in 1985, but dispute whether they are the only damages recoverable under the Fields' complaint.

The Seventh Circuit addressed the issue of when a shareholder in a corporation operating a car dealership may sue as an individual in *Carney v. General Motors Corp.*, 23 F.3d 1154 (7th Cir.1994). In *Carney*, Mr. Carney sued GM when it terminated the franchise belonging to Carney Chevrolet, a closely held corporation in which Mr. Carney was the sole shareholder. Mr. Carney asserted that he had standing to make his claim because he was not suing for breach of contract, but rather "'independent tortious conduct' ... that 'injured and damaged [him].'" *Id.* at 1157. The Seventh Circuit agreed with the district court that Mr. Carney was not a proper plaintiff and affirmed summary judgment for GM. The court explained that "Mr. Carney does not have an individual right to 'operate' a GM dealership.... This right belongs to Carney Chevrolet, and not to an individual corporate shareholder, even if he is the sole shareholder and chief executive." *Id.* at 1157 (citations omitted).

■ The Fields distinguish *Carney* by noting that Mr. Carney was really suing over Carney Chevrolet's contract with GM, whereas here the Fields are suing over GM's promise to them. GM concedes that *Carney* does not directly preclude the Fields' cause of action, but argues that because the "corporate damages ... are a theory of recovery on their ... breach of contract claim," the Fields cannot proceed. GM cites no authority for this proposition. As an intended beneficiary of the alleged contract, the Fields are entitled to sue to enforce it. See RESTATEMENT (SECOND) OF CONTRACTS § 305 (1981).

### Promissory Estoppel

■ In responding to GM's standing argument, the Fields have shown, however, that they cannot state a claim for promissory estoppel. In their surreply, the Fields concede that they did not have "title to the blue sky" that Fields Cadillac gave up in reliance on GM's promise to the Fields of another Cadillac dealership. Without detrimental reliance *by the Fields*, the Fields cannot recover.

The elements of promissory estoppel are (1) a promise unambiguous in terms, (2) reliance on such promise by the party to whom it was made, (3) which reliance was expected and foreseeable by the party making the promise, and (4) which reliance was to *the detriment of the party to whom the promise was made.*

*Yardley v. Yardley*, 137 Ill.App.3d 747, 484 N.E.2d 873, 878, 92 Ill.Dec. 142, 147 (2d Dist.1985) (emphasis added). *See also Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill.2d 281, 565 N.E.2d 990, 1004, 152 Ill.Dec. 308, 322 (1990) (citing *Yardley* and requiring for promissory estoppel that *"plaintiff* relied on the promise to its detriment") (emphasis added). Here, the Fields contend that GM promised to give them another Cadillac dealership and that they caused Fields Cadillac to resign its Cadillac franchise in reliance on that promise. The Fields cannot show, however, that the alleged reliance, giving up the Evanston Cadillac dealership, was done to *their* detriment. It was Fields Cadillac which gave up its

Cadillac dealership, and therefore the Fields cannot state a claim for promissory estoppel.[3]

The Fields attempt to save their claim by maintaining that they, as individuals, did suffer a detriment in reliance on GM's promise because "they lost their right to control the disposition of the goodwill and any future right to benefit from it." But *Carney* teaches that these alleged harms are simply injuries to the corporation. They are not separate rights belonging to the Fields for which they can sue. *Carney,* 23 F.3d at 1157 (dismissing individual plaintiff's suit where his only injury resulted from his status as a shareholder). *See also Kagan v. Edison Brothers Stores, Inc.,* 907 F.2d 690, 693 (7th Cir.1990) ("[Plaintiffs attempting to sue as individuals for harm to their corporation] seek the best of both worlds: limited liability for debts incurred in the corporate name, and direct compensation for its losses. That cushy position is not one the law affords. Investors who created the corporate form cannot rend the veil they wove."). Because the Fields did not suffer a personal detriment when Fields Cadillac terminated its DSSA, GM is entitled to summary judgment on the promissory estoppel claim.

### The Statute of Limitations

■ The parties agree that the appropriate statute of limitations is either four years (Illinois UCC) or five years (Illinois Code of Civil Procedure). Thus this suit is time barred if GM breached its contract with the Fields before June 8, 1989.

The Fields contend that in the early 1980's GM promised them the *next available* Cadillac dealership. In 1986, GM established a Cadillac dealership in Port Richey, Florida but did not give it to the Fields. Conse-

quently, GM breached the alleged contract in 1986.[4] Again in 1988, GM approved a Cadillac dealership in Jupiter, Florida, but did not give it to the Fields. Thus GM breached the alleged contract again in 1988.[5] Because GM breached the alleged contract in 1988 at the latest, this suit is time barred.

The Fields make two arguments why their suit should not be time barred. First, they contend that the statute of limitations did not begin to run until GM disavowed its alleged promise in the letter sent in June of 1992. The Fields cite no authority for the proposition that a cause of action for breach of contract does not arise until the contract is repudiated, however.[6] Because GM breached the alleged contract when it did not give the Fields the Jupiter dealership, the limitations period began to run in 1988, at the latest.

■ Second, the Fields argue that GM should be equitably estopped from raising the statute of limitations defense based on its conduct in reassuring the Fields that they would still get a Cadillac dealership. "In order for equitable estoppel to apply the conduct of the party against whom it is asserted must be such as 'to cause the other party to change his position by lulling him into a false security, thereby causing him to delay or waive the assertion of his rights to his damage.'" *Economy Fire & Casualty Co. v. GAB Business Services, Inc.,* 155 Ill. App.3d 197, 507 N.E.2d 896, 898, 107 Ill.Dec. 743, 745 (3rd Dist.1987) (quoting *Dickirson v. Pacific Mutual Life Insurance Co.,* 319 Ill. 311, 150 N.E. 256, 259 (1925)). As the party seeking to avoid summary judgment by estopping GM from raising the statute of limitations defense, the Fields must come for-

---

**3.** I note that the Fields' breach of contract claim does not fail for the same reason, however, because consideration given by a third party is adequate to bind the parties to a contract. Here, Fields Cadillac gave up its dealership rights as consideration for GM's contractual duty to give another franchise to the Fields. *See* Restatement (Second) of Contracts § 71 cmt. e (1981).

**4.** The Fields testified that they knew that GM had given the Port Richey dealership to someone else and believed that by doing so GM had broken its promise to them.

**5.** Again, the Fields knew about this decision and realized that GM was breaking its promise to them.

**6.** The Fields do cite case law for the proposition that parties to a contract may waive delays in performance. Here, however, because the alleged contract was for the *next available* Cadillac dealership, GM's failure to grant the Port Richey and Jupiter dealerships to the Fields was a breach of the contract and not simply a delay in performance.

ward with facts sufficient to create a jury question on the issue. *See Bomba v. W.L. Belvidere, Inc.*, 579 F.2d 1067, 1070–71 (7th Cir.1978).

■ The Fields point to two pieces of evidence they say shows that GM should be estopped from raising the statute of limitations. They first point to an April 1990 letter from a GM executive telling the Fields that "[t]he encouragement [he] gave [them] in 1985 . . . is still in effect . . . [If a dealership became available, GM] would certainly be interested in [their] specific application and proposal." The Fields also point to the deposition testimony of Earl Fields in which he stated that he spoke to GM executives about the Port Richey dealership. He testified that they told him "that there was no change in the commitment . . . and that this was a situation that [GM] was forced into by the corporate policy at that time." Earl Fields also testified that he received letters from GM executives after he expressed disappointment about the Jupiter dealership "where Cadillac continued to represent . . . that they would encourage [the Fields] and make efforts toward appointing [them] to a new Cadillac [dealership]."

■ These two pieces of evidence do not create an issue of fact as to whether GM is estopped from raising the statute of limitations defense. In Illinois, the defendant must "under[take] affirmative acts that lulled the plaintiff into a false sense of security that the limitations defense would not be raised." *Pack v. Santa Fe Park Enterprises, Inc.*, 209 Ill.App.3d 648, 568 N.E.2d 360, 363, 154 Ill. Dec. 360, 363 (1st Dist.1991). Various factors should be considered in determining whether the plaintiffs reasonably believed their claim would not be disputed:

> (1) concession of liability by the [defendant]; (2) conduct or statements by the [defendant] encouraging delay; (3) payments by the [defendant] during the negotiating period; and (4) plaintiff's awareness of the statute of limitations and whether plaintiff has retained counsel.

*Economy Fire & Casualty Co.*, 507 N.E.2d at 898, 107 Ill.Dec. at 745. Looking at these factors, it is clear that the Fields have not put forth sufficient evidence showing that they can prove estoppel.

First, GM's 1990 letter did not indicate (or even hint) that GM would not raise the statute of limitations defense. In fact, the language of the letter itself demonstrates that GM did not intend to compensate the Fields for its broken promise. The letter says merely that if another Cadillac dealership became available, GM "would certainly be interested in [the Fields'] specific application and proposal." GM's statement does not indicate that GM acknowledged its contract breach and intended to make reparations. Nor does the letter encourage the Fields not to assert their legal remedy.

The testimony of Earl Fields suffers from the same defect. He testified that after the Fields had been refused two separate Cadillac dealerships, GM executives "continued to represent . . . that they would encourage [the Fields] and make efforts toward appointing [them] to a new Cadillac [dealership]." If the agreement were as the Fields allege, to grant them the next available Cadillac dealership, then these representations indicate that GM did not consider itself bound by such a promise. Earl Fields testified only that he had been "encourage[d]" and that GM would "make efforts" to get the Fields a dealership. Reading this testimony and GM's letter in the light most favorable to the Fields, I find as a matter of law that the Fields could not prove equitable estoppel. Consequently, this complaint is time barred.[7]

### Conclusion

For the reasons stated above, GM's motion for summary judgment is granted.

---

**7.** The Fields do not assert that the statute of limitations for their promissory estoppel claim is longer than 5 years. Consequently, even if the Fields as individuals could state a claim for promissory estoppel, it would be time barred too.